# EXHIBIT A

# Resolution

### No.  24-57

AUTHORIZING PROCEEDINGS IN CONDEMNATION BY EMINENT
DOMAIN FOR THE ACQUISITION OF REAL PROPERTY INTERESTS
KNOWN AS LOT 1-B, CENTRAL MAUI SANITARY LANDFILL
SUBDIVISION FOR PHASE VI EXPANSION OPERATIONS

WHEREAS, the COUNTY OF MAUI ("County") is interested in real property known as Lot 1-B of the Central Maui Sanitary Landfill Subdivision, Pulehu Road, Puunene, Maui, Hawaii and identified as Tax Map Key Number (2) 3-8-003:020, and shown on Exhibit "A" ("Property"), a copy of which is attached and incorporated by reference, comprising approximately 19.663 acres of vacant land, which was formerly a quarry site; and

WHEREAS, KOMAR MAUI PROPERTIES I LLC ("KMP") is the legal and equitable owner of the Property, having purchased the Property for $700,000 and obtained title by deed dated December 4, 2015, recorded as document number A-58220424 in the Bureau of Conveyances of the State of Hawaii; and

WHEREAS, the County plans to develop and use the Property for Phase VI landfill expansion operations, a use for which it is particularly suited because the landfill has historically expanded into land that has been previously quarried; and

WHEREAS, representatives of the County and KMP have negotiated on multiple occasions since at least 2017 for the acquisition of the Property by the County and such negotiations have considered various approaches, including the purchase of the Property and the exchange of other County property for the Property; and

WHEREAS, despite significant efforts to resolve this matter, negotiations for the purchase of the Property have not been successful and the need for the expansion of the Central Maui Sanitary Landfill and County acquisition of the Property has become increasingly urgent; and

WHEREAS, the County obtained an appraisal report dated February 13, 2024 prepared by ACM Consultants, Inc. ("Appraisal Report"), which opines that the estimated fair market value of the Property is EIGHT HUNDRED THIRTY THOUSAND AND NO/100 DOLLARS ($830,000.00),

EXHIBIT A

## Resolution No. _____24-57_____

as reflected in the Appraisal Report, attached hereto as Exhibit "B" and incorporated herein by reference; and

WHEREAS, Sections 46-1.5(6), 46-61, and 46-62, Hawaii Revised Statutes ("HRS"), and Chapter 101, HRS, authorize counties to exercise the power of condemnation by eminent domain when it is in the public interest to do so; and

WHEREAS, pursuant to Section 101-13, HRS, "[w]henever any county deems it advisable or necessary to exercise the right of eminent domain in the furtherance of any governmental power, the proceedings may be instituted . . . after the . . . county council . . . of the county has authorized such suit by resolution duly passed . . . ."; and

WHEREAS, Section 101-13, HRS, also provides that the resolution "be published in a newspaper with the ayes and noes, at least one day (Sundays and legal holidays excepted), before final action upon it."; and

WHEREAS, Section 4-2(7), Revised Charter of the County of Maui (1983), as amended, states: "Resolutions authorizing proceedings in eminent domain shall be adopted as provided by law."; and

WHEREAS, Section 3.44.015(E), Maui County Code ("MCC"), states that the Council may authorize proceedings in eminent domain by passage of a resolution approved by a majority of its members; now, therefore,

BE IT RESOLVED by the Council of the County of Maui:

1.    That, pursuant to Sections 46-1.5(6), 46-61, and 46-62, HRS, and Chapter 101, HRS, Section 4-2(7), Revised Charter of the County of Maui (1983), as amended, and Section 3.44.015(E), MCC, the Council does declare that the acquisition of real property interests, known as Lot 1-B of the Central Maui Sanitary Landfill Subdivision, Puunene, Maui, Hawaii, identified as Tax Map Key Number (2) 3-8-003:020, by exercise of the power of condemnation by eminent domain, is in the public interest and necessary for the Central Maui Sanitary Landfill Phase VI and required solid waste disposal capacity and ongoing operations; and

2.    That proceedings in condemnation by eminent domain as

Resolution No. ___24-57___

provided by law be instituted for the acquisition of Lot 1-B of the Central Maui Sanitary Landfill Subdivision, Puunene, Maui, Hawaii, Tax Map Key Number (2) 3-8-003:020, comprising approximately 19.663 acres of land, as shown on Exhibit "A", attached and incorporated by reference; and

3.     That the Corporation Counsel of the County of Maui, State of Hawaii, is authorized and empowered to proceed in condemnation by eminent domain for the acquisition of said real property interests; and

4.     That the Corporation Counsel is further authorized to deposit with the Clerk of the Circuit Court of the Second Circuit, State of Hawaii, the estimated just compensation in the sum of EIGHT HUNDRED THIRTY THOUSAND AND NO/100 DOLLARS ($830,000.00), in order to obtain possession of said real property; and

5.     That the Corporation Counsel is authorized and empowered to negotiate terms of settlement, subject to the approval of the Council and of the Circuit Court of the Second Circuit, State of Hawaii, in which said proceedings are held; and

6.     That certified copies of this Resolution be transmitted to the Mayor, the Director of Finance, the Director of Environmental Management, and Corporation Counsel.

APPROVED AS TO FORM
  AND LEGALITY:


ANDREW V. NELSON
Deputy Corporation Counsel
County of Maui
2024-0147
2024-02-15  Lot 1-B, CMSLS, Eminent Domain Reso.docx

INTRODUCED BY:

Upon the request of the Mayor.



CENTRAL MAUI SANITARY LANDFILL SUBDIVISION

CONSOLIDATION OF LOTS 1, 2-A, 2-B AND PORTION
OF GRANT 3343 TO CLAUS SPRECKELS
(TAX MAP KEY (2) 3-8-003:201
AND RESUBDIVISION OF SAID CONSOLIDATION
INTO LOTS 2-A-1, 2-A-2, 1-A, AND 1-B
AND DELETION OF EXISTING EASEMENTS A AND B

Being Portions of Grant 3343 to Claus Spreckels and
all of Lots B and C of Section 1 Land Court Application 4

AT PUUNENE, WAILUKU, MAUI, HAWAII

R. T. TANAKA ENGINEERS, INC.

Exhibit "B"

# APPRAISAL REPORT

Appraisal to Determine the Market Value of Vacant Land
Property Identified as Tax Map Key (2) 3-8-003:020
Located along Pulehu Road, Puunene, Island of Maui, Hawaii

Date of Report

**February 13, 2024**

Prepared For

**Mr. Scott K. Teruya**
**Director of Finance**
**County of Maui**
**Department of Finance**
**200 South High Street**
**Wailuku, Hawaii 96793**

Prepared By

**ACM Consultants, Inc.**
**2073 Wells Street Suite 100**
**Wailuku, Hawaii 96793**



**CONSULTANTS, INC.**

Real Estate Valuation & Consulting

February 13, 2024

Mr. Scott K. Teruya
Director of Finance
County of Maui
Department of Finance
200 South High Street
Wailuku, Hawaii 96793

      **RE:**    **Appraisal to Determine the Fee Simple Market Value of Vacant Land**
                **Property Identified as Tax Map Key (2) 3-8-003:020**
                **Pulehu Road, Puunene, Maui, Hawaii**

Dear Mr. Teruya:

     In accordance with your request, I have prepared the accompanying appraisal report which determines the fee simple market value of a vacant land parcel identified as Tax Map Key (2) 3-8-003:020 containing approximately 19.663 acres of land area located along Pulehu Road, Puunene, Maui, Hawaii ("subject property").

     The final value estimate is based on the on-site inspection of the subject property; determination of highest and best use; research and study of available market data; application of the appraisal process; and a review of current economic and real estate market conditions.

     Based upon our research and study, the estimated market value of the subject property, as of February 13, 2024, subject to the "Certification," "Scope of Work," "Assignment Conditions," and "Assumptions and Limiting Conditions":

<div align="center">

**EIGHT HUNDRED THIRTY THOUSAND DOLLARS**
**($830,000)**

</div>

     The following appraisal report presents my analysis of data along with other pertinent materials on which the appraisal results are predicated.  Thank you for the opportunity to assist with this assignment.

Respectfully submitted,

*ACM Consultants, Inc.*

Ted Yamamura, SRA, R/W-AC
Executive Vice President

TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## TABLE OF CONTENTS

|  | **Page** |
|---|---|
| Table of Contents | 1 |
| Certification | 2 |

**PART I – INTRODUCTION**

| | |
|---|---|
| Appraisal Development and Reporting Process | 3 |
| Scope of Work | 3 |
| Purpose and Intended Use of the Appraisal | 3 |
| Client/Intended User | 4 |
| Date of Report/Effective Date/Property Inspection | 4 |
| Assignment Conditions | 4 |

**PART II – FACTUAL DATA**

| | |
|---|---|
| Neighborhood Description | 6 |
| Property and Site Data | 9 |
| State Land Use and County Zoning Maps | 11 |
| Community Plan Map | 12 |
| Maui County Directed Growth Plan | 13 |
| USDA Soil Map | 14 |
| Land Study Bureau Map | 15 |
| Photographs of the Subject Property | 16 |

**PART III – DATA ANALYSIS AND CONCLUSIONS**

| | |
|---|---|
| Highest and Best Use | 17 |
| The Appraisal Process | 19 |
| Application of the Sales Comparison Approach | 19 |
| Table 1 – Site Valuation Worksheet | 22 |
| Conclusion of Value | 23 |

**PART IV – EXHIBITS AND ADDENDA**  24

Assumptions and Limiting Conditions
Preliminary Title Report
Comparable Land Sales Location Map
Comparable Land Sales Descriptions
County Zoning Ordinance
State of Hawaii & County of Maui Economic Data
Flood Map
Qualifications of the Appraiser



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## CERTIFICATION

The undersigned does hereby certify that to the best of my knowledge and belief:

(1)  The statements of fact contained in this report are true and correct.

(2)  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.

(3)  I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

(4)  I have performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.

(5)  I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

(6)  My engagement in this assignment was not contingent upon developing or reporting predetermined results.

(7)  My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

(8)  My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.

(9)  I have made a personal inspection of the property that is the subject of this report.

(10)  Ashley Haleakala, CRA-1118, researched factual data and conducted market analysis. As of the date of this report, Ashley Haleakala has completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute. No other person(s) provided significant professional assistance to the person signing this report.

(11)  The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute.

(12)  The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

(13)  As of the date of this report, Ted Yamamura has completed the continuing education program for Designated Members of the Appraisal Institute.

ACM Consultants, Inc.

Ted Yamamura, SRA, R/W-AC
Certified General Appraiser
State of Hawaii, CGA-160
Expiration:  December 31, 2025

2



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## PART I – INTRODUCTION

<div align="center">APPRAISAL DEVELOPMENT AND REPORTING PROCESS</div>

This is an *Appraisal Report* which complies with the reporting requirements set forth under Standards Rule 2-2(a) of the *Uniform Standards of Professional Appraisal Practice*, and provides sufficient information to enable the client and intended user(s) to understand the rationale for the opinions and conclusions, including reconciliation of the data and approaches.  The amount of detail varies with the significance of the information to the appraisal.  This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, assignment conditions, statement of assumptions and limiting conditions, and certifications contained herein.

<div align="center">SCOPE OF WORK</div>

The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report, including the following definition of market value, assignment conditions, statement of assumptions and limiting conditions, and certifications as contained in the report.  The Appraiser has at a minimum performed a visual inspection of the observable areas of the subject property, considered the neighborhood and its characteristics, viewed each of the comparable sales, and researched, verified, and analyzed data from public and/or private sources that were deemed to be reliable.  An analysis of Highest and Best Use was conducted and the conclusion was the basis upon which valuation was derived.  All typical approaches to value were considered although only the most relevant is used in the report.  The valuation methodology employed is deemed sufficient to develop credible assignment results.  Finally, the analysis, opinions and conclusions were reported in this appraisal report.

<div align="center">PURPOSE AND INTENDED USE OF THE APPRAISAL</div>

The purpose of this appraisal, as of February 13, 2024, is to estimate the fee simple market value of the following:

*A vacant parcel of land containing approximately 19.663 acres of land area,*
*Tax Map Key (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii ("subject property").*

The intended use of this report is to provide real property information, real estate market data, and an informed value conclusion to assist the Client in internal decision-making.

*Definition of Fee Simple[1]*

*"Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat."*

---

[1] Appraisal Institute. *The Dictionary of Real Estate Appraisal.* 7th Edition. Chicago, Illinois: Appraisal Institute, 2022.

<div align="center">3</div>



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

*Definition of Market Value*[2]

*"The most probable price, as of a specified date, in cash, or in terms equivalent to cash, or in other precisely revealed terms, for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress."*

## CLIENT/INTENDED USER

The County of Maui is the Client.  The intended users are the Client and their duly authorized representatives and assigns.  The appraisal is not intended for any other user and is not to be relied upon by any third parties for any purpose whatsoever. The Appraiser is not responsible for unauthorized use of the report.

## DATE OF REPORT/EFFECTIVE DATE/PROPERTY INSPECTION

The subject property was physically inspected by Ted Yamamura on April 7, 2023.  The date of this appraisal report and the effective date of valuation is February 13, 2024.

## ASSIGNMENT CONDITIONS

The following assumptions and conditions were incorporated for analysis, purposes of comparison, and determination of assignment results.

There is no personal property (FF&E) included in this valuation.

**Extraordinary Assumptions**[3]  An extraordinary assumption is defined as *"an assignment-specific assumption, as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions."*  Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis. The application of an extraordinary assumption could have an effect on the value of the property.

(1)  At the time of viewing the subject property, the property pins and boundary markers were not visible to the Appraiser.  As such, the approximate boundaries viewed by the Appraiser, based on publicly available maps and/or maps provided by the Client, are assumed to be correct.  It is also assumed that there are no encroachments between the subject and its adjacent properties.

---

[2] Appraisal Institute. *The Dictionary of Real Estate Appraisal.* 7th Edition. Chicago, Illinois: Appraisal Institute, 2022
[3] The Appraisal Standards Board. *Uniform Standards of Professional Appraisal Practice (USPAP)*. 2024 Edition. Washington, DC: The Appraisal Foundation, 2024.

4



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

(2)  The appraiser has relied on data provided by third parties in this appraisal report. Such data may include, but is not limited to, flood maps, multiple listing real estate services, tax assessment records, public land records, satellite imagery, virtual street views, property data services, surveys, engineering reports, and property data aggregations.  After examination of the data and data sources, the appraiser has used only the data he or she considers reliable.  The appraiser assumes there are no material omissions and makes no guarantees, express or implied, regarding the accuracy of this data.  The appraiser reserves the right to make appropriate revisions if additional or more accurate data is discovered.

(3)  Assignment results developed in this appraisal are based on the assumption that the subject property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions.  Since the Appraiser is not an expert in the detection of such substances and conditions, it is possible that tests and inspections made by a qualified environmental expert would reveal the existence of hazardous materials and detrimental environmental conditions on or around the subject property that would negatively affect the assignment results.

There were no other extraordinary assumptions.

**Hypothetical Condition**[4]  A hypothetical condition is defined as *"a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis."*  Hypothetical conditions assume conditions contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property such as market conditions or trends; or about the integrity of the data used in an analysis.  The application of the hypothetical condition could have an effect on the value of the property.

This appraisal is not subject to any hypothetical conditions.

---

[4] The Appraisal Standards Board. *Uniform Standards of Professional Appraisal Practice (USPAP)*. 2024 Edition. Washington, DC: The Appraisal Foundation, 2024.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## PART II – FACTUAL DATA

<div style="background:black; color:white; text-align:center">NEIGHBORHOOD DESCRIPTION</div>



The subject is located on the Island of Maui in the State of Hawaii. Maui is the second largest of the Hawaiian Islands with a total land area of approximately 734.5 square miles, or 470,080 acres. The County of Maui is the official municipal entity of the island of Maui and the neighboring islands of Molokai, Lanai, and Kahoolawe. It is the third most populous of the four counties of Hawaii with about 10% of the resident population of the State. Maui is the largest of the four islands within the county and contains the county seat of government in Wailuku town.

Central Maui is defined by physical and man-made boundaries, and encompasses an area known as Wailuku-Kahului. This region is located along the north shore of the Island of Maui isthmus and encompasses the civic and business centers of Wailuku and Kahului. The island's major seaport and primary airport are also contained within the boundaries of this region. The surrounding agricultural land of Central Maui, and the eastern half of the West Maui Mountains, are also within the Wailuku-Kahului neighborhood.

The boundaries of the Wailuku-Kahului region are the northern shoreline from Poelua Bay to Baldwin Park on the north, Kailua Gulch and Lowrie Ditch on the east, Spanish Road to Waikapu Road to Honoapiilani Highway to Pohakea Gulch on the south, and the Wailuku Judicial District boundary on the west.

Population is concentrated in the urban centers of the region. Wailuku has maintained its role as the civic-financial-cultural center while Kahului has strengthened its role in recent years as the business and industrial center. In addition to the urban centers of Wailuku-Kahului, the region also includes the more rural settlements of Waihee and Waiehu to the north, and Waikapu and Puunene to the southeast. Agricultural lands are adjacent on the lower slopes of the West Maui Mountains and in the central plain south and east of Kahului. This green border is a significant part of the settlement pattern because of its open space and economic value. Kahului Harbor and Airport are major land users along the Kahului shoreline. As major ports of entry for people and goods, they serve as an important center of jobs and economic activity.

The major thoroughfares through Kahului and Wailuku are Kaahumanu Avenue which begins in Kahului and provides primary access to Wailuku as well as Lahaina and Kihei; Hana Highway, which is actually a continuation of Kaahumanu Avenue, leads from Kahului to the eastern or "upcountry" portions of the island; and Puunene Avenue which provides access to all major areas in Kahului and ultimately leads to the new Kuihelani Highway which provides by-pass access to Lahaina and Kihei. The Kaahumanu Avenue also runs into Main Street, and via secondary access, runs into Waiehu Beach Road and Lower Main Street.

6



Kahului is situated on the northwest portion of the island of Maui, and is the central commercial, industrial and residential area of Maui.  Kahului Town contains Maui's major shopping centers, centralized industrial areas, financial institutions, medical office facilities and business offices.  Additionally, the Kahului Airport and Kahului Harbor are located in Kahului proper and houses the majority of firms providing various goods and services throughout the island, as well as to Lanai and Molokai.  Consistent with its central location, post office facilities, community library, parks, schools (elementary, intermediate, high school and a community college), churches of various denominations, entertainment facilities, food outlets and a fire station are located in Kahului.

Wailuku, at one time, was the heart of Maui's business activities.  Decentralization of business to nearby Kahului and lack of maintenance and modernization of buildings to keep up with the new shopping habits brought about a gradual decline.  However, since the creation of the municipal parking area in Wailuku, several new buildings have been built or renovated and a rejuvenation of the Wailuku Town is being experienced.  The current Community Plan envisions Wailuku as the "governmental, cultural and professional center of Maui".  Located in Wailuku are the various government agencies, courts, hospital, major recreational facilities and police station.

All public utilities including electricity, water, telephone, and sewer service are available in Kahului and Wailuku, as are police, fire and ambulance services.  Propane gas is not a public utility, however, is available.  All charges for public services are standardized for Central Maui, as well as for the Island of Maui.

With public transportation growing steadily on Maui, Kahului and Wailuku are easily accessible from most parts of the island.  This and the fact that they are central to airport and harbor facilities, commercial and industrial establishments, properties located in this area are ideal.

Due to this region being the center of County, State and Federal offices, as well as community services, properties in these areas are anticipated to be in greater demand in the years ahead.  Based on the desirability of this area and forecasted demand here, property values are expected to continue their appreciation in the long-term future.

7



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

**MAUI COUNTY – MARKET TRENDS**



Source:  Realtors Association of Maui, Inc. – Maui Real Estate Market Reports

Based on data from the Realtors Association of Maui, the median sales price for single family and condominium properties has indicated an overall upward trend over the past ten years.  The median sales price for single family property was $1,200,000 in 2023, a 9 percent increase as compared to $1,105,000 in 2022, and the median sales price for condominium units was $832,500 in 2023, a 7 percent increase as compared to $775,000 in 2022.  Vacant land prices indicated a more moderate upward trend over the same time period.  The median sales price was $715,000 in 2023, a 10 percent increase as compared to $650,000 in 2022.  The most recent statistics, as of December 2023, indicate monthly median prices at $1,200,000 for single family homes, $850,000 for condominiums, and $942,000 for vacant land.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## PROPERTY AND SITE DATA

The "*subject property*" is identified and described below.

| Tax Map Key | (2) 3-8-003:020 |
|---|---|
| Legal Description | All of that certain parcel of land (being portion of the land(s) described in and covered by Royal Patent Grant Number 3343 to Claus Spreckels) situate, lying and being at Puunene, Wailuku, Island and County of Maui, State of Hawaii, being LOT 1-B of the "CENTRAL MAUI SANITARY LANDFILL SUBDIVISION" (Subdivision File No. 3.2203).<br><br>*(map of Central Maui Sanitary Landfill Subdivision)* |
| Address | Pulehu Road<br>Puunene, Maui, Hawaii 96784 |
| Owner of Record | Komar Maui Properties I LLC<br>74-5610 Alapa Street<br>Kailua-Kona, HI 96740 |
| Census Tract | 0319.00 |
| Real Estate Assessment and Taxes (2023) | Land:  $835,700<br>Buildings:  $0<br><br>Taxes:  $5,891.69 |
| 5 Year Transaction History | 12/10/2015, Deed, Alexander & Baldwin, LLCX to Komar Maui Properties I LLC, $700,000, Doc 58220424. |

9



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

| | |
|---|---|
| *State Land Use* | The subject is designated in the SLU Agriculture District. |
| *County Zoning* | The present zoning is Agriculture District. |
| *Community Plan* | The present designation in the Wailuku-Kahului Community Plan is Agriculture. |
| *Directed Growth Plan* | Urban Growth. |
| *Special Management Area* | The property is not located within the SMA area and is not subject to the restrictions therein. |
| *Size, Shape and Other Physical Characteristics* | 19.663 acres, mostly rectangular in shape, and level to irregular/steep sloping topography, due to its prior use as a quarry. The southwesterly boundary fronts Pulehu Road while the remaining boundaries abut other agriculture zoned properties utilized as part of the County of Maui's Central Maui Landfill. Soil is mixed dirt and rock. |
| *Utilities/Access* | Electricity is available from along Pulehu Road but is not on site. There is no public water supply readily available no on site. Roadway access is via Pulehu Road which is a secondary public roadway providing access from central Maui to the upcountry neighborhood. |
| *Flood Status* | The subject parcel is located within FEMA Map Number 15000300414E and identified as being in Zone X. Zone X indicates areas determined to be outside the 0.2% annual chance floodplain. No mandatory flood insurance applies. |
| *Encumbrances, Detrimental Conditions, Easements and Restrictions* | According to the legal description of the subject, the property is encumbered by utility and electric transformer line easements. There were no other known or readily apparent adverse conditions or easements affecting the subject site.<br><br>No archeological, historical, environmental, engineering, soils, topographic, drainage, or wetland studies were provided to the Appraiser which may have an impact on the final value estimate. It is therefore assumed that there are no detrimental conditions concerning these factors which may influence the final value estimate. |
| *Improvements* | None. |



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## STATE LAND USE AND COUNTY ZONING MAPS



*Source: Esri, HERE, Garmin, Intermap, NGA, USGS | County of Maui; Hawaii Statewide GIS Program. | Hawaii State Land Use Commission; Hawaii Statewide GIS Program*



*Source: Department of Planning - County of Maui | Maui Island Digital Zoning Map 1*

11



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-B009

## COMMUNITY PLAN MAP

The subject property is designated for agriculture use in the Wailuku-Kahului Community Plan. The purpose of the Community Plan is to provide a relatively detailed scheme for implementing the objectives and policies of the Maui County General Plan relative to the region.  Contained in this plan is the desired sequence, patterns and characteristics of future developments for the region as well as statements of standards and principals with respect to development and statements indicating the sequence in which future development is to occur.



12



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## MAUI COUNTY DIRECTED GROWTH PLAN

The subject property is located within the Urban Growth Boundary (UGB) of the Maui Island Plan. The Maui Island Plan (MIP) is a component of the Maui County General Plan and is a comprehensive plan to establish urban, small town, and rural growth boundaries in Maui County. The Directed Growth Plan will provide the framework for future community plan and zoning changes and guide the development of the County's short-term and long-term capital improvement plan budgets.





TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## USDA SOIL MAP



| Map Unit ID | Map Unit Description | Approximate % of Land Area | Farmland Classification |
|---|---|---|---|
| QU | Quarry | 0.8% | Not prime farmland |
| rRK | Rock land | 0.4% | Not prime farmland |
| WeB | Waikoloa silty clay loam, 3 to 7 percent slopes | 98.8% | Prime farmland if irrigated |

14



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-B009

## LAND STUDY BUREAU MAP

The University of Hawai'i, Land Study Bureau (LSB) developed the Overall Productivity Rating, which classified soils according to five (5) levels, with "A" representing the class of highest productivity soils and "E" representing the lowest. These letters are followed by numbers which further classify the soil types by conveying such information as texture, drainage, and stoniness. The ratings are based on soil properties, topography, climate, and other factors.

The lands underlying the subject property is predominantly rated "A" which is the highest productivity level. Small portions are within LSB class E which are the poorest rated lands.



Hawaii LSB Land Class Locator
Resource Mapping Hawaii, Maxar | Esri, HERE, GeoTechnologies, Inc. | Land Study Bureau; Hawaii Statewide GIS Program | County of Hawaii; City and County of Honolulu; County of Kauai; County of Maui; Hawaii Statewide GIS Program.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## PHOTOGRAPHS OF THE SUBJECT PROPERTY



**Overall View of the Subject**



**Overall View of the Subject**



**Street Scene – Pulehu Road**

16



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## PART III – DATA ANALYSIS AND CONCLUSIONS

<div style="background:black;color:white;text-align:center;font-weight:bold;">HIGHEST AND BEST USE</div>

Highest and best use is defined as *"The reasonably probable use of property that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity."*[5]

Since the appraisal of the subject property is based on a particular premise of use, the highest and best use analysis determines just what this premise of use should be. The primary consideration in the analysis of the highest and best use of the subject property is the site as if vacant and available for development.

<u>THE PROPERTY AS IF VACANT AND AVAILABLE</u>

The first major aspect of the highest and best use analysis is considering the property as if it were vacant and available for development. This assumption is made to determine whether the land alone is worth more than the existing property, as is. In other words, this is the beginning benchmark to compare with the highest and best use of the property, as is, to determine whether the site is presently under-utilized.

*Physically Possible Use*

The physical aspects of the site impose the first constraint on any possible use of the property. The subject parcel contains approximately 19.663 acres of land area. It is mostly rectangular in shape with irregular terrain varying from level to steep sloping topography. Historically, the subject property was quarried. The appraiser has not been provided with soil or subsoil or other engineering studies to determine the load-bearing capacity of the parcel. However, based on our knowledge of other properties in the immediate vicinity, soil conditions and drainage problems, if any, can be adequately managed. Based only on the physical aspects of the site, a limited variety of non-residential uses would be possible.

*Legally Permissible Use*

The State Land Use designation of the subject parcel is Agricultural District, the underlying County zoning is Agricultural District, and the Wailuku-Kahului Community Plan designation is Agriculture. Primary permitted uses in the Agricultural District include (1) agriculture; (2) agricultural land conservation; (3) agricultural parks, pursuant to chapter 171 Hawaii Revised Statutes; (4) animal and livestock raising, including animal feed lots and sales yards; (5) private agricultural parks as defined in the Maui County Code; (6) minor utility facilities as defined in section 19.04.040, Maui County Code; (7) retention, restoration, rehabilitation, or improvement of buildings, sites or cultural landscapes of historical or archaeological significance; and (8) solar energy facilities, as defined in section 19.04.040, Maui County Code. In addition, the ordinance allows rural residential uses as an accessory use to permitted principal uses; this includes a primary single-family residence (farm dwelling), accessory dwellings of 1,000 square feet or less, and farm labor dwellings. Other accessory uses are listed in the Agricultural District zoning ordinance displayed in its entirety in the Exhibits section of this report.

---

[5] Appraisal Institute. *The Dictionary of Real Estate Appraisal.* 7th Edition. Chicago, Illinois: Appraisal Institute, 2022.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

The Wailuku-Kahului Community Plan designation for the subject is (AG) Agriculture. It is further located within the Urban Growth Boundary (UGB) of the Maui Island Plan. There are no known of anticipated changes in land use or zoning, and the present land use designations of the property places no legal limitation on the potential uses of the property.

*Financially Feasible Use*

The subject is located on the eastern side of Pulehu Road in Puunene. The subject's overall location is convenient with respect to many supporting facilities in Kahului and Wailuku, such as shopping, schools, employment, recreational areas and government agencies. Neighboring parcels are also designated for agriculture uses and there are no anticipated changes in land use in the near future. Surrounding uses are limited to commercial agricultural lands and the Central Maui Landfill. Thus, similar uses of subject property would be considered feasible. Rural residential use is not considered a suitable use as there is a lack of infrastructure and domestic utilities, particularly water supply, and the subject's location in close proximity to and immediately adjacent to the Central Maui Landfill.

Based on the subject's location, surrounding uses, and Agriculture zoning, it is the Appraiser's opinion that similar or complementary uses consistent with those uses permitted by the subject's Agricultural District zoning and land use designations would be considered financially feasible.

*Maximally Productive Use*

In the final analysis, a determination must be made as to which feasible use is the highest and best use of the parcels as if vacant. Since residential use of the subject parcel may not be feasible due to the lack of infrastructure and water availability, and the subject's location adjacent to the Central Maui Landfill, it is the appraiser's opinion that the most reasonable use of the subject property, as of the effective date of appraisal, would be those uses permitted under the Agricultural District zoning ordinance as limited by its physical characteristics, and with the exception of residential uses.

<u>*Conclusion of Highest and Best Use – As Vacant*</u>

In identifying the highest and best use of the site as though vacant, we have examined and considered the legally permissible, physically possible, financially feasible and maximally profitable uses. The subject site is currently zoned agriculture, located in a rural/agriculture neighborhood, and the immediate surrounding parcels are similarly zoned and utilized predominantly for commercial agricultural use and County landfill use. Based upon the analysis of the site's locational and physical attributes, current zoning and land use ordinances, and lack of public infrastructure in the neighborhood, the highest and best use of the subject property, as though vacant and available, would be those uses permitted under the Agricultural District zoning ordinance as limited by its physical characteristics, and with the exception of residential uses.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## THE APPRAISAL PROCESS

The appraisal process examined the three generally recognized and accepted valuation methods; namely, the *Income Approach, Cost Approach* and the *Sales Comparison Approach.*

### *Income Capitalization Approach*

The Income Capitalization Approach involves the conversion of anticipated future benefits (income) to be derived from the ownership of a property into an estimate of value. The Income Approach was not applicable in this appraisal assignment and not employed since only the land component was being determined.

### *Cost Approach*

The Cost Approach is applicable to improved properties where the depreciated value of the improvements is added to the estimate land value. The cost approach was not utilized in this appraisal assignment since only vacant land was being evaluated and valued.

### *Sales Comparison Approach*

The most commonly accepted method for land valuation is the Sales Comparison Approach which involves the comparison of comparable properties that have recently sold with the subject property. After analysis of the significance and applicability of the three generally recognized approaches to value, it was concluded that the Sales Comparison Approach was the most applicable methodology in the valuation of the subject parcel.

### **Application of the Sales Comparison Approach**

The most commonly accepted approach for land valuation is the direct comparison of the subject land with sales of other land parcels in the market. Proper application of the Sales Comparison Approach requires knowledge of the standards of the local market plus a detailed property inspection and personal observation. The ability to interpret land characteristics are necessary together with knowledge and experience of typical buyer preferences and price reactions in the local market. Finally, the application of sound judgment is required to produce reasonable results.

The Sales Comparison Approach involves the comparison of comparable properties that have recently sold with the subject property. The subject property is the "standard" upon which all comparisons and adjustments are made. Because no two properties are ever truly identical, the prices of the market indicators must be reduced to various units of comparison to reflect the value of the subject property. Typically, the variations in sales prices reflect differences in size, location, zoning, time and terms of sale, and the physical characteristics of the land.

The value indication is developed using a unit of comparison in which the type of site being appraised is typically bought and sold on the market. In this assignment, the price per acre was considered the most appropriate unit of comparison due to the varying sizes of the comparable land sales as compared to the subject.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

Primary criteria utilized in the market research and selection of vacant land comparables included consideration of the following factors:

- Relatively recent transaction date, location with the same or competing neighborhood, and similar community characteristics
- Similarity in size area and/or zoning and permitted land use/density, topographic features, public utilities, access, and view amenities

*Comparable Selection*

Based upon the above criteria, the appraiser conducted a search for competitive vacant land transactions in the immediate vicinity of the subject.  Due to the scarcity of reasonably similar and competitive land transactions in the subject's neighborhood, research was expanded to include older competitive land transactions in the subject's immediate area, as well as recent acreage transactions on Omaopio Road in Kula.  The vacant land comparables selected and utilized in the Site Valuation Worksheet (**Table 1**) represent the most reasonably recent and competitive transactions available for market comparison.

- Land Transaction No. 1.  Tax Map Key (2) 3-8-003-025 is located on Pulehu Road in Puunene and is situated in the immediate vicinity of the subject property.  The parcel contains approximately 59.307 acres of agricultural-zoned land.  The property transacted on December 31, 2020, for $1,695,000 or $28,580 per acre.

- Land Transaction No. 2.  Tax Map Key (2) 2-3-003-266 is located on Omaopio Road in Kula, and the parcel contains approximately 10.652 acres of agricultural-zoned land.  The property transacted on March 23, 2023, for $1,350,000 or $126,737 per acre.

- Land Transaction No. 3.  Tax Map Key (2) 2-3-003-036 is located on Omaopio Road in Kula, and the parcel contains approximately 26.246 acres of agricultural-zoned land.  The property transacted on July 14, 2023, for $2,100,000 or $80,012 per acre.

*Description of Property Adjustments*

*Market Conditions (Time):* This appraisal relied on comparable sales that occurred during a time of market volatility and unpredictability, affected by various factors related to the Covid 19 pandemic. The market demand and sales activity were influenced by different kinds of buyers with different goals and preferences, resulting in significant variations in prices and values.  Furthermore, the large number of buyers from other states and countries and the diverse nature of the transactions made it challenging to obtain accurate data or perform meaningful analysis based on paired-sales or statistics.  The long-term impacts of the pandemic on the real estate market are still uncertain.  Therefore, no adjustments were made to account for time differences among the comparable sales.

*Location:*  Comparable land sale 1 is located within the subject's immediate area and no adjustments were required.   Comparable land sales 2 and 3 are located in superior rural residential/agricultural neighborhoods in Kula and negative adjustments were warranted.

20



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

*Access/Utilities:*  Roadway access and the availability of utilities determine the potential use and development of land.  The subject and all of the comparable land sales were relatively similar in roadway access and no adjustments were considered.

The subject and comparable land sale 1 have access to public electricity but have no water on site.  Comparable land sales 2 and 3 have access to public electricity and water.  In order to adjust for water, a study was conducted to determine the difference in value between vacant parcels with and without water.  Based upon this analysis, it was concluded that parcels with water indicated a premium of approximately 30% in value than parcels without water.  Thus, negative 30% adjustments were applied as appropriate.

*Zoning/State Land Use/Community Plan/etc.:*  Zoning determines land uses and density.  The subject property and all comparables are similarly zoned and no adjustments were deemed necessary.

*Site Encumbrances:*  The subject and comparable land sales 1 contain easement encumbrances.  Comparable land sales 3 and 4 have no known encumbrances affecting the usable areas and negative adjustments were warranted.

*Other Physical Characteristics:*  The physical characteristics of the subject and comparables including shape, configuration, topography, and terrain were considered.  The steep and irregular terrain of the subject property due to quarrying necessitated negative adjustments to comparable land sales 1, 2, and 3 which possessed superior topography as compared to the subject.

*Size:*  The land sales ranged in parcel sizes and typically the larger the parcel the lower the unit value and the smaller the parcel the higher the unit value.  In order to address the disparity in size between the comparables and the subject, a size adjustment based on statistical analysis was applied to each land sale.

*Comparable Weighting:*  A weighting process is utilized to acknowledge the most applicable (reliable) of the comparables.  In determining the subject's unit value, greatest weight was placed on Comparable 1, which was the most recent sale located within the subject's immediate neighborhood.  Secondary reliance was placed on the remaining comparable sales.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

**TABLE 1**

### SITE VALUATION WORKSHEET
### LAND TRANSACTION ANALYSIS AND ADJUSTMENT SCHEDULE

| | Subject | COMPARABLE LAND TRANSACTIONS | | |
|---|---|---|---|---|
| | | Land Sale 2 | Land Sale 3 | Land Sale 4 |
| **Tax Map Key (Division 2)** | **3-8-003-020** | **3-8-003-025** | **2-3-003-266** | **2-3-003-036** |
| Street Address | Pulehu Road | Pulehu Road | 619 Omaopio Road | 1990 Omaopio Road |
| Community Location | Puunene | Puunene | Kula | Kula |
| **County Zoning District** | **Agricultural District** | **Agricultural District** | **Agricultural District** | **Agricultural District** |
| Community Plan Designation | Agriculture | Agriculture | Agriculture | Agriculture |
| Directed Growth Boundary | Urban - Landfill | Urban - Landfill | No | No |
| Special Management Area | No | No | No | No |
| State Land Use District | Agricultural District | Agricultural District | Agricultural District | Agricultural District |
| Land Tenure | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Parcel Configuration | Mostly rectangular | Irregular | Irregular-flag lot | Irregular-flag lot |
| Topography | Lvl to irregular/steep slope | Level/Gentle slope | Level/Irregular slope | Level/Irregular slope |
| Roadway Accessibility | Adequate | Adequate | Adequate | Adequate |
| Utilities | Elec avail/No water | Elec avail/No water | Elec/Water available | Elec/County Wtr mtr |
| FEMA Flood Status | Zone X | Zone X | Zone X | Zone X |
| Site Encumbrances | Electric/Utility Esmts | Utility Esmt/Stream | None known | None known |
| **Gross Land Area in Acres** | **19.663** | **59.307** | **10.652** | **26.246** |
| **Recordation Date** | | 12/31/2020 | 3/23/2023 | 7/14/2023 |
| Instrument | | Deed | Deed | Deed |
| **Transaction Price** | | **$1,695,000** | **$1,350,000** | **$2,100,000** |
| Financing/Conditions of Sale Adjustment | | $0 | $0 | $0 |
| Adjusted Transaction Price | | $1,695,000 | $1,350,000 | $2,100,000 |
| Indicated Transaction Price per Acre | | $28,580 | $126,737 | $80,012 |
| Market Conditions Adjustment (Time) | | 1.00 | 1.00 | 1.00 |
| Market Conditions Adjusted Unit Price | | $28,580 | $126,737 | $80,012 |
| **ADJUSTMENTS** | | | | |
| Location | | 0% | -10% | -10% |
| Access/Utilities | | 0% | -30% | -30% |
| Zoning/Community Plan | | 0% | 0% | 0% |
| Site Encumbrances | | 0% | -5% | -5% |
| Other Physical Characteristics | | -5% | -5% | -5% |
| **Net Adjustments** | | -5% | -50% | -50% |
| Adjusted Unit Price | | $27,151 | $63,369 | $40,006 |
| Size Adjustment | | 1.30 | 0.87 | 1.07 |
| **Final Size Adjusted Unit Price per Acre** | | **$35,296** | **$55,131** | **$42,806** |
| **WEIGHTING FACTOR** | | 50.00% | 25.00% | 25.00% |
| Product | | $17,648 | $13,783 | $10,702 |

| | | |
|---|---|---|
| Range of Final Adjusted Value: | $35,296 | $55,131 per Acre |
| Median Unit Value: | | $42,806 per Acre |
| Mean Unit Value: | | $44,411 per Acre |
| Weighted Unit Value: | | $42,133 per Acre |
| Estimated Value of the Land, Fee Simple: | | $42,133 per Acre |
| Indicated Site Value: | 19.663 Ac x | $42,133 = $828,461 |

Rounded to **$830,000**

22


ACM
CONSULTANTS, INC.

TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-B009

## CONCLUSION OF VALUE

After application of the appraisal process; research, analysis and selection of comparable sales; adjusting for the variations in the properties; and application of a weighted average, it is concluded that the subject property is fairly represented by $42,133 per acre, or for 19.663 acres, rounded:

**EIGHT HUNDRED THIRTY THOUSAND DOLLARS**
**($830,000)**

Exposure Time

The estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective of the appraisal would have been 18 to 24 months.

23



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## PART IV – EXHIBITS AND ADDENDA

**ASSUMPTIONS AND LIMITING CONDITIONS**

The research, analysis, and value conclusions contained in this appraisal are guided and influenced by the following assumptions and conditions, and constitute the framework of our study.

- No responsibility is assumed for matters legal in character or nature. No opinion is rendered as to title, which is assumed to be good and marketable. The property is appraised fee and clear of any or all existing liens, encumbrances, and assessments unless otherwise noted, and having responsible ownership and competent management.

- Legal descriptions referenced in the report were obtained from public documents from the State of Hawaii, Bureau of Conveyances, or were furnished by the client or other third-party, and were assumed to be correct. However, no warranty is given for their accuracy.

- It is assumed that all applicable zoning and use regulations and restrictions have been complied with, unless a nonconformity has been stated, defined, and considered in this appraisal report.

- It is assumed that all required licenses, certificates of occupancy or other legislative or administrative authority from any local, state, or national governmental or private entity or organization have been or can be obtained or renewed for any use on which the value estimates contained in this report are based.

- It is assumed that the utilization of the land and improvements is within the boundaries or property lines of the property described and that there is no encroachment or trespass unless otherwise stated in this report. Responsible ownership and competent property management are assumed unless otherwise stated in this report.

- The Appraiser has viewed, as far as possible, the land and the improvements; however, it was not possible to personally observe conditions beneath the soil or hidden structurally or by other components. The appraisal assumes that there are no hidden, unapparent, or apparent conditions of the property site, subsoil, or structures which would render it more or less valuable. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.

- The appraiser is not qualified to detect hazardous waste and/or toxic materials. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he/she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. No responsibility is assumed for any environmental conditions, or for any expertise or engineering knowledge required to discover them. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

- All engineering is assumed to be correct. Any plot plans and illustrative material in this report are included only to assist the reader in visualizing the property. Any sketch in this report may show approximate dimensions and is included to assist the reader in visualizing the property. Maps and exhibits found in this report are provided for reader reference purposes only. No guarantee as to accuracy is expressed or implied unless otherwise stated in this report. No survey has been made for the purpose of this report.

- Information provided by the client, property owner, owners' representative, or persons designated by the client or owner to supply said information are accurate and correct unless otherwise specially noted in the appraisal report. Additionally, information from third parties including government agencies, financial institutions, realtors, buyers, sellers, and others and contained in this report were obtained from sources considered reliable and believed to be true and correct. However, no warranty is assumed for possible misinformation.

24



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

- The analyses, opinions and conclusions of the appraiser are based on the data available at the time of writing. However, the appraiser may revise or modify these elements if new or more reliable data emerges that affects the valuation. The appraiser retains the right to make such adjustments as deemed necessary.

- If analysis contained in this appraisal involve partial interests in real estate, the value of the fractional interest plus the value of all other fractional interests may or may not equal the value of the entire fee simple estate considered as a whole.

- Unless otherwise stated in this report, the subject property is appraised without a specific compliance survey having been conducted to determine if the property is or is not in conformance with the requirements of the Americans with Disabilities Act. The presence of architectural and communications barriers that are structural in nature that would restrict access by disabled individuals may adversely affect the property's value, marketability, or utility.

- The Client is the party or parties who engage an appraiser (by employment contract) in a specific assignment. A party receiving a copy of this report from the client does not, as a consequence, become a party to the appraiser-client relationship. Any person who receives a copy of this appraisal report as a consequence of disclosure requirements that apply to an appraiser's client, does not become an intended user of this report unless the client specifically identified them at the time of the assignment. The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

- The Appraiser(s) or those assisting in preparation of the report will not be asked or required to give testimony in court or hearing because of having made the appraisal, in full or in part, nor engage in post appraisal consultation with client or third parties except under separate and special arrangement and at additional fee. If testimony or deposition is required because of subpoena, the client shall be responsible for any additional time, fees, and charges regardless of issuing party.

- Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser, or the firm with which the appraiser is connected) shall be disseminated to the public through advertising, public relations, news sales, or other media without prior written consent and approval of the appraiser.

- The appraiser will not disclose the contents of this appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and/or applicable federal, state or local laws.

- Acceptance of, and/or use of this appraisal report by client or any third party constitutes acceptance of the ACM Consultants, Inc., Certification and Limiting and Contingent Conditions, and any other special assumptions or conditions set forth in the Report. Appraiser liability extends only to stated client, not subsequent parties or users of any type, and the total liability of Appraiser(s) and firm is limited to the amount of fee received by Appraiser.

25



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## PRELIMINARY TITLE REPORT

### PRELIMINARY REPORT
(No Liability Hereunder)

This report (and any revisions thereto) is issued solely for the
convenience of the titleholder, the titleholder's agent, counsel,
purchaser or mortgagee, or the person ordering it for the purpose of
facilitating the issuance of a policy of title insurance by Title
Guaranty of Hawaii, LLC and no liability will arise under this report.

---------------------------------------------

### SCHEDULE A

Title Guaranty of Hawaii, LLC (the "Company") hereby reports that,
subject to those matters set forth in Schedule "B" hereof, the title
to the estate or interest to the land described in Schedule "C" hereof
is vested in:

KOMAR MAUI PROPERTIES I LLC,
a Hawaii limited liability company,
as Fee Owner

This report is dated as of February 06, 2024 at 8:00 a.m.

**Inquiries concerning escrow should be directed to:**
Escrow Officer - Gwen Vida; Office: (808)871-2296
Email: gvida@tghawaii.com

**Inquiries concerning this report should be directed to:**
Title Officer - Karen Siracusa; Office: (808)539-7712
Email: Karen.Siracusa@tghawaii.com
Please reference Order No. 7311431749



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## SCHEDULE B
## EXCEPTIONS

1.   Real Property Taxes, if any, that may be due and owing.

     Tax Key: (2) 3-8-003-020    Area Assessed: 19.665 acres

     Tax Classification: INDUSTRIAL

     Real Property Tax Website: (2) 3-8-003-020


2.   Mineral and water rights of any nature.


3.   Any and all existing roadways, easements and rights of way.


4.   GRANT

     TO         :   MAUI ELECTRIC COMPANY, LIMITED and GTE HAWAIIAN
                    TELEPHONE COMPANY INCORPORATED, now known as
                    HAWAIIAN TELCOM, INC.

     DATED      :   March 8, 1989
     RECORDED   :   Liber 23097   Page 71
     GRANTING   :   a right and easement for utility purposes.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

SCHEDULE B CONTINUED

5.   Electric transformer line Easement(s) "6" and "7" as shown on Tax
     Map.

6.   FINAL ORDER OF CONDEMNATION dated November 25, 1996, filed in the
     Circuit Court of the Second Circuit, State of Hawaii on November
     26, 1996, recorded as Document No. 96-170196, re:  Easement(s)
     "6" and "7" for electrical transmission purposes over, under,
     across and through said Grant 3343, and more particularly
     described in Exhibit "B" attached therein.

7.   The terms and provisions contained in the following:

     INSTRUMENT :  SUBDIVISION AGREEMENT (AGRICULTURAL USE)

     DATED      :  October 16, 2008
     RECORDED   :  Document No. 2008-167600
     PARTIES    :  ALEXANDER & BALDWIN, INC., a Hawaii corporation,
                   "Owner", and the COUNTY OF MAUI, by its Department
                   of Environmental Management, "County"

8.   The terms and provisions contained in the following:

     INSTRUMENT :  AGREEMENT FOR ALLOCATION OF FUTURE SUBDIVISION
                   POTENTIAL

     DATED      :  October 17, 2008
     RECORDED   :  Document No. 2008-167601
     PARTIES    :  ALEXANDER & BALDWIN, INC., a Hawaii corporation,
                   "Subdivider", and the COUNTY OF MAUI, by its
                   Department of Environmental Management, "County"

7311431749          © Title Guaranty of Hawaii, LLC              Page 3
                   235 QUEEN ST. HONOLULU HAWAII 96813 PH (808) 533-6261



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

SCHEDULE B CONTINUED

9.   Rights of others who may have easement or access rights in the
     land described in Schedule C.

10.  The terms and provisions contained in the following:

     INSTRUMENT :   LIMITED WARRANTY DEED WITH COVENANTS, RESERVATIONS
                    AND RESTRICTIONS

     DATED      :   December 4, 2015
     RECORDED   :   Document No. A-58220424

11.  MORTGAGE

     MORTGAGOR  :   KOMAR MAUI PROPERTIES I LLC, a Hawaii limited
                    liability company

     MORTGAGEE  :   BANK OF HAWAII, a Hawaii corporation

     DATED      :   December 4, 2015
     RECORDED   :   Document No. A-58220425
     AMOUNT     :   $700,000.00

**END OF SCHEDULE B**



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

SCHEDULE C

All of that certain parcel of land (being portion of the land(s) described in and covered by Royal Patent Grant Number 3343 to Claus Spreckels) situate, lying and being at Puunene, Wailuku, Island and County of Maui, State of Hawaii, being LOT 1-B of the "CENTRAL MAUI SANITARY LANDFILL SUBDIVISION" (Subdivision File No. 3.2203), and thus bounded and described as per survey dated November 16, 2015, to-wit:

Beginning at the westerly corner of this parcel of land at a point on the northeasterly side of Pulehu Road (40 feet wide), being also the southwesterly corner of Lot 1-A of the Central Maui Sanitary Landfill Subdivision (Subdivision File No. 3.2203), the coordinates of said point of beginning referred to Government Survey Triangulation Station "PUUNENE 2" being 16,025.16 feet south and 8,500.12 feet west, thence running by azimuths measured clockwise from true South:

| | | | |
|---|---|---|---|
| 1. | 226° 28' 30" | 1115.26 | feet along Lot 1-A of the Central Maui Sanitary Landfill Subdivision (Subdivision File No. 3.2203) (1/2-inch pipe found); |
| 2. | 324° 10' | 700.05 | feet along same (1/2-inch pipe found); |
| 3. | 353° 18' | 339.28 | feet along same (1/2-inch pipe found); |
| 4. | 83° 18' | 22.93 | feet along same; |
| 5. | | | Thence along same on a curve to the left having a radius of 422.00 feet, the chord azimuth and distance being 76° 10' 30" 104.69 feet; |
| 6. | 69° 03' | 192.43 | feet along same (spike set); |
| 7. | | | Thence along same on a curve to the left having a radius of 422.00 feet, the chord azimuth and distance being 54° 24' 213.46 feet; |
| 8. | 39° 45' | 208.08 | feet along same (nail found); |

© **Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU HAWAII 96813 PH (808) 533-6261

Page 5



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-B009

SCHEDULE C CONTINUED

9.      Thence along same on a curve to the right having a radius of
                        30.00 feet, the chord azimuth and
                        distance being 84° 45' 42.43 feet
                        to a point on said northeasterly
                        side of Pulehu Road (1

10.   129°  45'       723.52   feet along said northeasterly side of
                        Pulehu Road (1/2-inch pipe found);

11.   140°  08'  30"   76.12   feet along same to the point of
                        beginning and containing an area of
                        19.663 acres, more or less.


BEING THE PREMISES ACQUIRED BY LIMITED WARRANTY DEED WITH
COVENANTS, RESERVATIONS AND RESTRICTIONS

GRANTOR     :   ALEXANDER & BALDWIN, LLC, a Hawaii limited
                liability company

GRANTEE     :   KOMAR MAUI PROPERTIES I LLC, a Hawaii limited
                liability company

DATED       :   December 4, 2015
RECORDED    :   Document No. A-58_20434


**END OF SCHEDULE C**



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## GENERAL NOTES

1.  There is hereby omitted from any covenants, conditions and
    reservations contained herein any covenant or restriction based
    on race, color, religion, sex, sexual orientation, familial
    status, marital status, disability, handicap, national origin,
    ancestry, or source of income, as set forth in applicable state
    or federal laws, except to the extent that said covenant or
    restriction is permitted by applicable law.  Lawful restrictions
    under state or federal law on the age of occupants in senior
    housing or housing for older persons shall not be construed as
    restrictions based on familial status.

© **Title Guaranty of Hawaii, LLC**
235 QUEEN ST., HONOLULU, HAWAII 96813 PH (808) 533-6261

Page 7



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## GUIDELINES FOR THE ISSUANCE OF INSURANCE

A. Taxes shown in Schedule B are as of the date such information is available from the taxing authority. Evidence of payment of all taxes and assessments subsequent to such date must be provided prior to recordation.

B. Evidence of authority regarding the execution of all documents pertaining to the transaction is required prior to recordation.  This includes corporate resolutions, copies of partnership agreements, powers of attorney and trust instruments.

C. If an entity (corporation, partnership, limited liability company, etc.) is not registered in Hawaii, evidence of its formation and existence under the laws where such entity is formed must be presented prior to recordation.

D. If the transaction involves a construction loan, the following is required:

   (1)  a letter confirming that there is no construction prior to recordation; or

   (2)  if there is such construction, appropriate indemnity agreements, financial statements and other relevant information from the owner, developer, general contractor and major sub-contractors must be submitted to the Company for approval at least one week prior to the anticipated date of recordation.

   Forms are available upon request from the Company.

E. Chapter 669, Hawaii Revised Statutes, sets forth acceptable tolerances for discrepancies in structures or improvements relative to private property boundaries for various classes of real property.  If your survey map shows a position discrepancy that falls within the tolerances of Chapter 669, call your title officer as affirmative coverage may be available to insured lenders.

F. The right is reserved to make additional exceptions and/or requirements upon examination of all documents submitted in connection with this transaction.

G. If a policy of title insurance is issued, it will exclude from coverage all matters set forth in Schedule B of this report and in the printed Exclusions from Coverage contained in an ALTA policy or in the Hawaii Standard Owner's Policy, as applicable.  Different forms may have different exclusions and should be reviewed.  Copies of the policy forms are available upon request from the Company or on our website at www.tghawaii.com.

H. Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

7311431749          © **Title Guaranty of Hawaii, LLC**          Page 8
235 QUEEN ST., HONOLULU HAWAII 96813 PH (808) 533-6261

33



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

DATE PRINTED:  02/08/2024

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
(2)      3      8     003    020   0000

CLASS: INDUSTRIAL          AREA ASSESSED:        856,520 SF

ASSESSED VALUES FOR CURRENT YEAR TAXES:  2023

The records of this division show the assessed values and taxes on the
property designated by Tax Key shown above are as follows:

| | | |
|---|---|---|
| BUILDING | $ | 0 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 0 |
| LAND | $ | 835,700 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 835,700 |
| TOTAL NET VALUE | $ | 835,700 |

Installment (1 - due 8/20;  2 - due 2/20) Tax Info As Of - 08/20/2023

| Tax Year | Installment | Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount | |
|---|---|---|---|---|---|---|---|
| 2023 | 2 | 2,945.84 | | | | 2,945.84 | PENDING |
| 2023 | 1 | 2,945.85 | | | | 2,945.85 | PAID |
| 2022 | 2 | 2,668.42 | | | | 2,668.42 | PAID |
| 2022 | 1 | 2,668.43 | | | | 2,668.43 | PAID |

Total Amount Due:   2,945.84

Penalty and Interest Computed to: 08/20/2023

The real property tax information provided is based on information furnished by the
respective counties, is deemed reliable but not guaranteed, and no warranties are
given express or implied. Billing and tax collection details may have changed. Please
refer to the appropriate county real property tax offices for any further information
or updates for the subject property.

7311431749          **© Title Guaranty of Hawaii, LLC**          Page 9
235 QUEEN ST, HONOLULU HAWAII 96813 PH (808) 533-6261

34



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## COMPARABLE LAND SALES LOCATION MAP



Sale 1
Pulehu Road
Kahului, HI 96732
1.00 miles NW

Subject
Pulehu Road
Kahului, HI 96732

Sale 3
1090 Omaopio Road
Kula, HI 96790
5.63 miles SE

Sale 2
519 Omaopio Road
Kula, HI 96790
6.35 miles SE

© 2024 TomTom, © 2024 Microsoft Corporation



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## COMPARABLE LAND SALES DESCRIPTIONS

### LAND TRANSACTION 1

 

### Property and Land Data

| | |
|---|---|
| Street Address | Pulehu Road, Puunene, Maui, Hawaii |
| Tax Map Key | (2) 3-8-003-025 |
| Land Area | 59.307 acres |
| County Zoning | Agricultural District |
| Community Plan | Agriculture |
| State Land Use | Agricultural District |
| Special Management Area | No |
| Assessed Land Value (2023) | $1,328,500 |
| Flood Zone | Zone X |
| Shape/Topography | Irregular/Level to gentle slope |
| Access/Utilities | Public roadway/Electricity available, no water |
| Encumbrances | Utility easements and stream |
| Improvements | None noted |

### Transaction Data

| | |
|---|---|
| Transaction Price | $1,695,000 |
| Recordation Date | 12/31/2020 |
| Recordation Number | Doc 76700397 |
| Instrument | Deed |
| Property Rights | Fee Simple |
| Grantor | Alexander & Baldwin LLC |
| Grantee | County of Maui |
| Comments | Vacant agriculture-zoned parcel located in the Puunene neighborhood of central Maui. |
| Source | Hawaii Information Service, County of Maui Real Property Tax Office. |



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## LAND TRANSACTION 2




## Property and Land Data

| | |
|---|---|
| *Street Address* | 619 Omaopio Road, Kula, Maui, Hawaii |
| *Tax Map Key* | (2) 2-3-003-266 |
| *Land Area* | 10.652 Acres |
| *County Zoning* | Agricultural District |
| *Community Plan* | Agriculture |
| *State Land Use* | Agricultural District |
| *Special Management Area* | No |
| *Assessed Land Value (2023)* | $1,950,900 |
| *Flood Zone* | Zone X |
| *Shape/Topography* | Irregular-Flag lot/Level to irregular slope |
| *Access/Utilities* | Public roadway/Electricity/water available |
| *Encumbrances* | None known |
| *Improvements* | None noted |

## Transaction Data

| | |
|---|---|
| *Transaction Price* | $1,350,000 |
| *Recordation Date* | 3/23/2023 |
| *Recordation Number* | Doc 84820292 |
| *Instrument* | Deed |
| *Property Rights* | Fee Simple |
| *Grantor* | Omaopio Land LLC |
| *Grantee* | Barry Sullivan |
| *Comments* | Vacant agriculture-zoned parcel located in the Kula area of upcountry Maui. |
| *Source* | Multiple Listing Service, Hawaii Information Service, County of Maui Real Property Tax Office. |



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-B009

## LAND TRANSACTION 3




## Property and Land Data

| | |
|---|---|
| Street Address | 1990 Omaopio Road, Kula, Maui, Hawaii |
| Tax Map Key | (2) 2-3-003-036 |
| Land Area | 26.246 Acres |
| County Zoning | Agricultural District |
| Community Plan | Agriculture |
| State Land Use | Agricultural District |
| Special Management Area | No |
| Assessed Land Value (2023) | $2,154,200 |
| Flood Zone | Zone X |
| Shape/Topography | Irregular-Flag lot/Level to irregular slope |
| Access/Utilities | Public roadway/Electricity/water available |
| Encumbrances | None known |
| Improvements | None noted |

## Transaction Data

| | |
|---|---|
| Transaction Price | $2,100,000 |
| Recordation Date | 7/14/2023 |
| Recordation Number | Doc 85950286 |
| Instrument | Deed |
| Property Rights | Fee Simple |
| Grantor | Mauka Vista Farms LLC |
| Grantee | Baham Interests Limited Partnership |
| Comments | Vacant agriculture-zoned parcel located in the Kula area of upcountry Maui. |
| Source | Multiple Listing Service, Hawaii Information Service, County of Maui Real Property Tax Office. |



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## COUNTY ZONING ORDINANCE

### TITLE 19 – Zoning
### Article II. – Comprehensive Zoning Provisions

### Chapter 19.30A - AGRICULTURAL DISTRICT

**19.30A.010 – Purpose and intent.**
A. Purpose. The purpose of the agricultural district is to:
    1. Implement chapter 205, Hawai'i Revised Statutes, and the goals and policies of the Maui County general plan and community plans;
    2. Promote agricultural development;
    3. Preserve and protect agricultural resources; and
    4. Support the agricultural character and components of the County's economy and lifestyle.
B. Intent. It is the intent of this chapter to:
    1. Reduce the land use conflicts arising from encroachment of nonagricultural uses into agricultural areas;
    2. Mitigate rising property values of farm lands to make agricultural use more economically feasible;
    3. Discourage developing or subdividing lands within the agricultural district for residential uses, thereby preserving agricultural lands and allowing proper planning of land use and infrastructure development;
    4. Discourage establishment of nonagricultural subdivisions;
    5. Ensure that the rezoning of land from the agricultural district shall be open for public debate and in the overall public interest, as evidenced by conformance with the Maui County general plan and community plan land use designations and policies, State land use law, this chapter and good planning practices; and
    6. Notify the public that lands within the agricultural district are used for agricultural purposes. Owners, residents, and other users of such property or neighboring properties may be subjected to inconvenience, discomfort, and the possibility of injury to property and health arising from normal and accepted agricultural practices and operations. Such normal and accepted agricultural practices and operations include but are not limited to noise, odors, dust, smoke, the operation of machinery of any kind, including aircraft, and the storage and disposal of manure. Owners, occupants, and users of such property or neighboring properties shall be prepared to accept such inconveniences, discomfort, and possibility of injury from normal agricultural operations.
(Ord. 2749 § 3 (part), 1998)

**19.30A.015 - Definitions.**
When used in this chapter, unless the context clearly indicates a different meaning, the following words and terms shall be defined as follows:
    "Active agriculture operation" means a commercial or subsistence agricultural, silvicultural, or aquacultural facility or pursuit, including the care and production of livestock and livestock products, poultry and poultry products, apiary products, and plant and animal production for nonfood uses; the planting, cultivating, harvesting, and processing of crops; and the farming or ranching of any plant or animal species in a controlled salt, brackish, or freshwater environment.
    "Agricultural food establishment" means a building or structure, owned and operated by a producer and permitted under title 11, chapter 50 of the administrative rules of the state department of health, that prepares and serves food at retail using agricultural products grown, raised, or caught in the County, and value-added products that were produced using agricultural products grown, raised, or caught in Hawaii.
    "Agricultural products stand" means a building, structure, or place that is partially enclosed by walls, at least twenty-five percent open to the outside when in operation, owned and operated by a single agricultural product producer for the display and sale of agricultural products grown, raised, or caught in the County, and value-added products produced using agricultural products grown, raised, or caught in Hawaii.
    "Agricultural retail structure" means a fully-enclosed building or structure owned and operated by a single producer for the display and sale of agricultural products grown, raised, or caught in Hawaii, value-added products that were produced using agricultural products grown, raised, or caught in Hawaii, logo items related to the producer's agricultural operations, and other food items.
    "Commercial agricultural structure" means an agricultural products stand, farmer's market, agricultural retail structure, or agricultural food establishment.
    "Farmer's market" means either:
        The temporary use of land that is managed by a single producer who leases space or stalls for the outdoor sale of agricultural products grown, raised, or caught in the County or value-added products that were produced using agricultural products grown, raised, or caught in Hawaii; or
        A building or structure managed by a single producer who leases space or stalls for the display and direct retail sale of agricultural products grown, raised, or caught in the County or value-added products that were produced using agricultural products grown, raised, or caught in Hawaii.
    "Logo item" means an item for direct retail sale by a producer that has the producer's business logo permanently affixed to it. Logo items include, but are not limited to, clothing, cups, glasses, stationery, and writing instruments.

39



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

"Other food item" means a food item that is neither an agricultural product grown, raised, or caught in the County nor a value-added product that was produced using agricultural products grown, raised, or caught in Hawaii.

"Producer" means an owner, lessee, or licensee of land located within the agricultural district, who is engaged in the growing or production for sale of any agricultural product or value-added products on such land.

"Total floor area" includes areas used for outdoor seating, dining, or retail activities. It does not include areas used for parking or agricultural product production.

"Value-added" refers to a raw agricultural product whose market value has been increased by special manufacturing, marketing, or processing.
(Ord. 4246, § 2, 2015)

### 19.30A.020 - District criteria.

Agricultural lands that meet at least two of the following criteria should be given the highest priority for retention in the agricultural district:

A. Agricultural Lands of Importance to the State of Hawai'i (ALISH);
B. Lands not classified by the ALISH system whose agricultural land suitability, based on soil, topographic, and climatic conditions, supports the production of agricultural commodities, including but not limited to coffee, taro, watercress, ginger, orchard and flower crops and nonirrigated pineapple. In addition, these lands shall include lands used for intensive animal husbandry, and lands in agricultural cultivation in five of the ten years immediately preceding the date of approval of this chapter; and
C. Lands which have seventy-five percent or more of their boundaries contiguous to lands within the agricultural district.
(Ord. 2749 § 3 (part), 1998)

### 19.30A.030 - District standards.

Except as otherwise provided in this chapter, the following district standards shall apply for uses, facilities and structures in the agricultural district:

A. Minimum lot area: two acres;
B. Minimum lot width: two hundred feet;
C. Minimum yard setbacks: front yards, twenty-five feet; side and rear yards, fifteen feet;
D. Maximum developable area: ten percent of the total lot area. This restriction shall apply to farm dwellings, but shall not apply to any structure or portion thereof which is used to support agriculture, including but not limited to storage facilities, barns, silos, greenhouses, farm labor dwellings, and stables, and shall not apply to utility facilities as permitted by this chapter;
E. Maximum height limit: Unless otherwise provided for in this chapter, the maximum height of any dwelling shall be thirty feet, except that vent pipes, fans, chimneys, antennae and solar collectors on roofs shall not exceed forty feet. Any nondwelling structure such as a barn or silo that is over thirty-five feet in height shall be set back one additional foot for each foot in structure height;
F. Maximum wall height: Walls shall not exceed four feet within the yard setback area as measured from the finished or existing grade, whichever is lower, to the top of the wall as defined herein, except for one utility wall per lot; utility walls shall not exceed seven feet in height and seven feet in width, and shall not obstruct sight distance for roadways or driveways. This does not preclude constructing fences on the top of the wall for safety purposes. The director of public works may permit greater heights of walls as needed to retain earth, water, or both for health and safety purposes;
G. The maximum number of lots that may be created from a lot, or portion thereof, that is in the agricultural district shall be based on the gross area of the subject lot, which for the purposes of this subsection shall be the tax map key parcel as certified by the real property tax division on March 1998, as follows:

| Agricultural District | | | | |
|---|---|---|---|---|
| Area of lot (in acres) | Maximum number of permitted lots: | | | |
| | 2-acre minimum lot size | 15-acre-minimum lot size | 25-acre minimum lot size | 40-acre minimum lot size |
| At least 2 but less than 31 | 7 | | | |
| At least 31 but less than 61 | 7, plus one additional lot for each 10 acres above 31 acres | | | |
| At least 61 but less than 92 | 10, plus one additional lot for each 15 acres; plus ↑ | 1 | | |
| 92+ | 12, plus one additional lot for each 40 acres above 92 acres (not to exceed 14 lots); plus ↑ | 2, plus one additional lot for each 60 acres above 92 acres; plus ↑ | 1, plus one additional lot for each 100 acres above 92 acres; plus ↑ | one for each 160 acres above 92 acres |



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

For the purposes of this subsection, any lot(s) or portions(s) thereof that is contained entirely within the subject lot, and that is owned by the same persons or related corporate entities as the subject lot, shall be considered a part of the subject lot and shall count towards the maximum number of permitted lots that may be created from the subject lot.

This subsection shall not apply to any lot which received preliminary subdivision approval prior to the effective date of the ordinance codified in this chapter and which receives final subdivision approval after the effective date of said ordinance. The subsequent lots resulting from such subdivision shall be subject to this subsection.

(Ord. No. 4049, § 2, 2013; Ord. 2749 § 3 (part), 1998)

**19.30A.040 – Limitations on resubdivision.**
A. At the time of subdivision, the director of public works shall determine the maximum number of lots that can be created based upon the provisions and standards set forth in section 19.30A.030.
B. The subdivider shall allocate the maximum number of lots that can be created between the original lot and any new lot created as a result of the subdivision.
C. The allocation of lots shall be recorded with the bureau of conveyances.
D. No lot, or portion thereof, which is in the agricultural district shall be further subdivided beyond the maximum number of lots permitted pursuant to this chapter and as recorded with the bureau of conveyances, except as provided by subsection 19.30A.040.C.
E. The following subdivisions shall not reduce the gross "area of lot" or the "maximum number of permitted lots" as provided by subsection 19.030A.030.G:
   1. Any subdivision requested by a public agency or public utility company for a public purpose;
   2. Any consolidation and resubdivision in which no additional developable lots, as defined by section 18.04.123 of this code, are created, so long as this would not result in the potential to create any additional lots than could have been created prior to consolidation and resubdivision;
   3. Any subdivision for purposes of providing an easement exclusively for the protection of sites of cultural and historic significance; greenways; protection of sensitive environmental areas such as wetlands, streams, and endangered species habitat; and easements for public access to shoreline and mountain areas; or
   4. Any subdivision for purposes of providing a roadway easement, roadway lot, or restricted use lot.
F. If the original lot has been subdivided into the maximum number of lots permitted pursuant to this chapter, additional lots may be created for family members as described in subsections 18.20.280.B.1 and 18.20.280.B.2 of this code, whether or not a deferral of improvements is intended, with the approval of the council; the application for such additional lots shall be processed in the same manner as applications for conditional permits, as provided by chapter 19.40 of this title.
G. No deed, lease, agreement of sale, mortgage, or other instrument of conveyance shall contain any covenant or clause which restricts, directly or indirectly, the operation of agricultural activities on lands within the agricultural district. This subsection shall not apply to any covenant or clause existing prior to the effective date of the ordinance codified in this chapter.

(Ord. No. 4464, § 8, 2017; Ord. 2749 § 3 (part), 1998)

**19.30A.050 – Permitted uses.**
The following uses and structures are permitted in the agricultural district, subject to compliance with all other applicable laws:
A. Principal uses.
   1. Agriculture.
   2. Agricultural land conservation.
   3. Agricultural parks, in accordance with chapter 171, Hawaiʻi Revised Statutes.
   4. Animal and livestock raising, including animal feed lots, and sales yards.
   5. Private agricultural parks.
   6. Minor utility facilities as defined in section 19.04.040.
   7. Retention, restoration, rehabilitation, or improvement of buildings, sites, or cultural landscapes of historical or archaeological significance; this does not include zipline, canopy, and bungee jumping commercial operations that may be incorporated into the restoration of a historic site, which require a conditional permit under chapter 19.40.
   8. Solar energy facilities, as defined in section 19.04.040, and subject to the restrictions of chapter 205, Hawaiʻi Revised Statutes, that are less than fifteen acres, occupy no more than thirty-five percent of the lot, and are compatible with existing agricultural uses; except that land with soil classified by the land study bureau's detailed land classification as overall (master) productivity rating class D or E need not be compatible with existing agricultural uses.
B. Accessory uses. Uses that are incidental or subordinate to, or customarily used in conjunction with, a permitted principal use, as follows:
   1. Two farm dwellings per lot, one of which must not exceed one thousand square feet of developable area.
   2. One farm labor dwelling per five acres of lot area. On the island of Maui, the owner or lessee of the lot must meet at least two of the following three criteria:

41



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

    a.   Provide proof of at least $35,000 of gross sales of agricultural products per year, for the preceding two consecutive years, for each farm labor dwelling on the lot, as shown by state general excise tax forms and federal form 1040 Schedule F filings.

    b.   Provide certification by the department of water supply that agricultural water rates are being paid if the subject lot is served by the County water system.

    c.   Provide a farm plan that demonstrates the feasibility of commercial agricultural production.

On the islands of Molokaʻi and Lānaʻi, the owner or lessee of the lot must meet both of the criteria provided by subsections 19.30A.050(B)(2)(a) and 19.30A.050(B)(2)(b).

3.   A maximum of two commercial agricultural structures per lot, subject to parking requirements of chapter 19.36B.

4.   Storage, wholesale and distribution, including barns; greenhouses; storage facilities for agricultural supplies, products, and irrigation water; farmer's cooperatives; and similar structures customarily associated with one or more of the permitted principal uses or, for the purpose of this section, are associated with agriculture in the County.

5.   Processing of agricultural products, the majority of which are grown in the County.

6.   Energy systems, small-scale.

7.   Small-scale animal-keeping.

8.   Animal hospitals and animal board facilities; if conducted on the island of Molokaʻi, such uses must have been approved by the Molokaʻi planning commission as conforming to the intent of this chapter.

9.   Riding academies; if conducted on the island of Molokaʻi, such uses must have been approved by the Molokaʻi planning commission as conforming to the intent of this chapter.

10.  Open land recreation as follows: hiking; noncommercial camping; fishing; hunting; equestrian activities; rodeo arenas; arboretums; greenways; botanical gardens; guided tours that are accessory to principal uses, such as farm or plantation tours, petting zoos, and garden tours, excluding zipline, canopy, and bungee jumping conducted for commercial purposes; hang gliding; paragliding; mountain biking; and accessory restroom facilities. If hiking, fishing, hunting, equestrian activities, rodeo arenas, hang gliding, paragliding, or mountain biking are conducted for commercial purposes on the island of Molokaʻi, such uses must have been approved by the Molokaʻi planning commission as conforming to the intent of this chapter. Open land recreation uses or structures not specifically permitted by this subsection, subsection 19.30A.060(A)(7), or chapter 19.40, are prohibited; certain open land recreation uses or structures may also be required to obtain a special permit in accordance with chapter 205, Hawaiʻi Revised Statutes.

11.  Except on Molokaʻi, bed and breakfast homes permitted under chapter 19.64 that are:

    a.   Operated in conjunction with a bona fide agricultural operation that produced $35,000 of gross sales of agricultural products for each of the preceding two years, as shown by state general excise tax forms and federal form 1040 Schedule F filings; or

    b.   In compliance with all of the following criteria, except that the bed and breakfast home is not subject to a condominium property regime pursuant to chapter 514A or chapter 514B, Hawaiʻi Revised Statutes:

        i.   The lot was created prior to November 1, 2008.

        ii.   The lot is comprised of five acres or less.

        iii.  An approved farm plan has been fully implemented and is consistent with chapter 205, Hawaiʻi Revised Statutes; or

    c.   Located in sites listed on the State of Hawaiʻi register of historic places or the national register of historic places.

12.  Short-term rental homes permitted under chapter 19.65, except that an approved farm plan has been fully implemented and is consistent with chapter 205, Hawaiʻi Revised Statutes.

13.  Parks for public use, not including golf courses, and not including commercial uses, except when under the supervision of a government agency in charge of parks and playgrounds.

14.  Family child care homes as defined in section 46-15.35(b), Hawaiʻi Revised Statutes, that are registered in accordance with chapter 346, Hawaiʻi Revised Statutes, and located in a legally permitted farm dwelling.

15.  Other uses that primarily support a permitted principal use; however, the uses must be approved by the appropriate planning commission as conforming to the intent of this chapter.

(Ord. No. 5238, § 3, 2021; Ord. No. 4921, § 11, 2018; Ord. No. 4315, § 4, 2016 ; Ord. No. 4253, § 2, 2015; Ord. No. 4246, § 4, 2015; Ord. No. 3824, § 2, 2011; Ord. No. 3611, § 3, 2008; Ord. 2749 § 3 (part), 1998)

**19.30A.060 – Special uses.**

A.   The following uses and structures are permitted in the agricultural district if a special use permit, as provided in A. The following uses and structures are permitted in the agricultural district if a special use permit, as provided in section 19.510.070, is obtained; except that if a use described in this section also requires a special permit as provided in chapter 205, Hawaiʻi Revised Statutes, and if the land area of the subject parcel is fifteen acres or less, the special permit shall fulfill the requirements of this section:

1.   Additional farm dwellings beyond those permitted by subsection 19.30A.050(B)(1).

2.   Farm labor dwellings that do not meet the criteria of subsection 19.30A.050(B)(2).

3.   Commercial agricultural structures that do not meet the standards and restrictions of this chapter.

4.   Public and quasi-public institutions that are necessary for agricultural practices.

5.   Major utility facilities as defined in section 19.04.040.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

6. Telecommunications and broadcasting antenna.
7. Open land recreation uses, structures, or facilities that do not meet the criteria of subsection 19.30A.050(B)(10), including commercial camping, gun or firing ranges, archery ranges, skeet shooting, paint ball, skateboarding, rollerblading, playing fields, rappelling, except rappelling within five hundred feet of a waterfall, and accessory buildings and structures. Certain open land recreation uses or structures may also be required to obtain a special permit as provided in section 205-6, Hawai'i Revised Statutes. The following uses or structures are prohibited: airports, heliports, drive-in theaters, country clubs, drag strips, motor sports facilities, golf courses, golf driving ranges; and, on Moloka'i, commercial zipline, canopy, rappelling, and bungee jumping.
8. Cemeteries, crematories, and mausoleums.
9. Churches and religious institutions.
10. Mining and resource extraction.
11. Landfills.
12. Solar energy facilities that are greater than fifteen acres.
B. Home businesses are permitted when a State special permit, as provided in section 205-6, Hawaii Revised Statutes, is obtained; provided that, the home business shall comply with the provisions of chapter 19.67 of this title, and shall obtain a County special use permit when required by chapter 19.67 of this title.
(Ord. No. 5238, § 4, 2021; Ord. No. 4315, § 5, 2016 ; Ord. No. 4315, Ord. No. 4246, § 5, 2015; Ord. No. 4168, § 8, 2014; ord. no. 3941, § 10, 2012; ord. no. 3824, § 3, 2011; ord. 2749 § 3 (part), 1998)

### 19.30A.070 - Private agricultural parks.
Private agricultural parks provide for appropriately sized, functionally configured, and affordable agricultural parcels to support diversified agricultural development. Lots created for the purposes of establishing or expanding a private agricultural park shall not be counted in or as part of the number of lots permitted by subsection 19.30A.030.G. Except as otherwise provided in this chapter, the following requirements and standards shall apply for uses, facilities, and structures in areas designated as private agricultural parks:
A. Individual lot leases or deeds shall provide that the lots is restricted to agricultural purposes;
B. Lots within private agricultural parks shall be made available for lease or sale;
C. No permanent or temporary dwellings or farm dwellings, including trailers and campers, shall be permitted within a private agricultural park, unless the following requirement are met:
   1. A special use permit, pursuant to section 19.510.070, Maui County Code, has been obtained;
   2. The lot on which the dwelling is located is used principally for agriculture, and the occupant of the dwelling provides security or caretaker services for the private agricultural park;
   3. A maximum of one dwelling per lot;
   4. The private agricultural park shall be subject to a maximum density of one dwelling per twenty-five acres of private agricultural park area; and
   5. The dwelling shall be subject to a maximum developable area of seven hundred square feet.
D. A restrictive covenant excluding dwellings that do not meet the criteria of subsection 19.30A.070.C shall be included in the deed of the lot and run with said lot as long as said lot is within the agricultural district. This restriction shall not prohibit the construction of storage sheds, equipment sheds or other structures appropriate to the agricultural activity carried on within the lot;
E. Agricultural parks shall not be less than twenty-five acres in size;
F. Minimum lot area: five acres;
G. Subdivision requirements, as set forth in the following provisions of Title 18, Maui County Code, shall not apply to private agricultural parks and the lots therein:
   1. 18.16.010 to 18.16.180;
   2. 18.16.270 to 18.16.310B;
   3. 18.16.320;
   4. 18.20 to 18.20.090;
   5. 18.20.140; and
   6. 18.28; and
H. All requirements set forth herein shall terminate if an area designated as an agricultural park is rezoned to a nonagricultural zoning district.
(Ord. 2749 § 3 (part), 1998)

### 19.30A.072 - Commercial agricultural structures.
A. Requirements. All commercial agricultural structures are subject to the following requirements and restrictions:
   1. A commercial agricultural structure may sell agricultural products or value-added products that are not grown, raised, caught or produced on the lot on which the commercial agricultural structure is located, so long as an active agriculture operation is present on the lot where the commercial agriculture structure is located.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

2. A farm plan showing an active agriculture operation shall be provided to the department of planning and its implementation shall be verified before a commercial agricultural structure commences operation. Agricultural products stands that are less than three hundred square feet in total floor area are exempt from this requirement.

B. Agricultural products stands. An agricultural products stand that is more than one thousand square feet in total floor area shall require a special use permit.

C. Farmer's markets. All farmer's markets are subject to the following requirements:

1. A farmer's market that is more than three thousand square feet in total floor area shall require a special use permit.

2. All farmer's markets shall operate only during daylight hours.

D. Agricultural retail structures. Agricultural retail structures are subject to the following requirements:

1. An agricultural retail structure that is more than one thousand square feet in total floor area shall require a special use permit.

2. All agricultural retail structures that serve food shall require a permit as required under title 11, chapter 50 of the rules of the state department of health.

3. Within an agricultural retail structure, other food items and logo items shall occupy no more than forty percent of the total floor area.

E. Agricultural food establishments. All agricultural food establishments are subject to the following requirements:

1. An agricultural food establishment that is more than one thousand square feet in total floor area shall require a special use permit.

2. All food must be prepared in accordance with the State Department of Health rules and regulations.

F. Registration. Producers who propose to own or operate a commercial agricultural structure shall register the structure with the department of planning. The registration form shall include the following information:

1. The name, address, and contact information for the producer.

2. The tax map key number of the lot on which the proposed commercial agricultural structure is located.

3. Verification that the producer is the owner, lessee, or licensee of the lot on which the proposed commercial agricultural structure is located. If the producer is the lessee or licensee, authorization of the owner shall also be provided. A lessee or licensee must have a verifiable lease with a minimum duration of one year for the portion of the lot upon which the structure is located, or will be located.

4. The type of commercial agricultural structure(s) being registered.

5. The signature of the producer, certifying acknowledgment of and compliance with the requirements of this chapter and all other applicable laws and regulations, including those of the state department of health and the department of public works.

6. Any additional information requested by the planning director.

G. Database. The department of planning shall maintain a database of all commercial agricultural structures registered pursuant to this chapter.

H. Separate registration. Each commercial agricultural structure shall require a separate registration.

I. Exemption. Agricultural product stands that are three hundred square feet or less in total floor area are exempt from the registration requirements of this section.

J. Rules. Additional regulation of commercial agricultural structures may be established by administrative rules.
(Ord. No. 4246, § 6, 2015)

**19.30A.080 - Agricultural leases.**

A. Any landowner may enter into an agricultural lease provided that the following conditions are met:

1. The principal use of the leased land is agriculture; and

2. No permanent or temporary dwellings or farm dwellings, including trailers and campers, are constructed on the leased area. This restriction shall not prohibit the construction of storage sheds, equipment sheds or other structures appropriate to the agricultural activity carried on within the lot.

B. Subdivision requirements, as set forth in Title 18, Maui County Code, shall not apply to agricultural leases.
(Ord. 2749 § 3 (part), 1998)

**19.30A.090 - Substandard agricultural lots.**

Substandard agricultural lots existing prior to the enactment of the ordinance codified in this chapter shall be subject to the following standards:

A. Lots less than two acres but equal to or greater than one-half acre shall be subject to the yard and building height standards as set forth for lots of such area in section 19.29.020, Maui County Code, and shall be exempt from the maximum developable area restriction of subsection 19.30A.030.D; and

B. Lots less than one-half acre shall be subject to the yard and building height standards as set forth for lots of such area in sections 19.08.050 and 19.08.060, Maui County Code, and shall be exempt from the maximum developable area restriction of subsection 19.30A.030.D.
(Ord. 2749 § 3 (part), 1998)

**19.30A.100 - Exemptions pursuant to State law.**



A. If provided by Hawai'i Revised Statutes, for lands legally defined and recognized as kuleana or similar type of land ownership, such as land commission awards or royal patents, the district standards of section 19.30A.030, and the density restriction of subsection 19.30A.050.B.1, shall not apply.

B. Affordable housing projects as set forth in chapter 201E, Hawai'i Revised Statutes, shall be exempt from the requirements of this chapter.

(Ord. 2749 § 3 (part), 1998)

**19.30A.110 - Permits issued prior to the enactment of this ordinance.**

State or County special permits, special use permits, conditional permits and variances issued prior to the enactment of the ordinance codified in this chapter shall remain in full force and effect for their duration, and their renewal shall be subject to the provisions of this chapter. Any dwelling or structure that was constructed with a building permit that was approved prior to the enactment of said ordinance need not acquire a County special use permit, conditional permit or variance and may be reconstructed as permitted by the original building permit(s), and such dwellings or structures may be expanded or modified with a building permit, subject to the other provisions of this chapter and this title.

(Ord. 2749 § 3 (part), 1998)

**19.30A.120 – Rule-making authority.**

The planning director and the director of public works and waste management shall have the authority to adopt rules regarding the administration of this chapter.

(Ord. 2749 § 3 (part), 1998)



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

**STATE OF HAWAII/COUNTY OF MAUI ECONOMIC DATA**
Source:  State of Hawaii, Department of Business, Economic Development and Tourism

# STATE OF THE ECONOMY

Hawaii's major economic indicators were mixed in the third quarter of 2023. State general fund tax revenues, wage and salary jobs, and private building authorizations increased in the quarter compared to the third quarter of 2022. However, visitor arrivals and government contracts awarded decreased.

In the third quarter of 2023, the total number of visitors arriving by air to Hawaii decreased 102,079 or 4.2 percent and the average daily visitor census decreased 17,925 or 7.4 percent compared to the third quarter of 2022.

In the third quarter of 2023, the construction sector added 400 jobs or 1.1 percent compared with the same quarter of 2022. Government contracts awarded decreased $692.1 million or 70.1 percent, compared with the same quarter of 2022. In the third quarter of 2023, the permit value for private construction increased $246.4 million or 31.5 percent. According to the most recent excise tax base data available, construction put-in-place increased $364.8 million or 13.8 percent in the second quarter of 2023, compared with the same quarter of the previous year. For the first half of 2023, construction put-in-place increased $480.9 million or 9.2 percent compared with the same period of the previous year.

In the third quarter of 2023, State general fund tax revenues increased $106.1 million or 4.8 percent over the same period of 2022. The state general excise tax revenue increased $0.9 million or 0.1 percent, net individual income tax revenues increased $145.6 million or 22.5 percent, the transient accommodations tax (TAT) decreased $15.1 million or 6.4 percent, and net corporate income tax revenues decreased $14.3 million or 17.9 percent. In the first three quarters of 2023, State general fund tax revenues decreased $134.9 million or 1.8 percent over the same period of the previous year.

Labor market conditions were mixed. In the third quarter of 2023, Hawaii's non-agricultural wage and salary jobs averaged 628,200 jobs, an increase of 9,900 jobs or 1.6 percent from the same quarter of 2022, however, the civilian labor force declined by 6,250 persons or 0.9 percent.

The job increase in the third quarter of 2023 was due to job increases in both the private sector and the government sector. In this quarter, the private sector added about 8,700 non-agricultural jobs compared to the third quarter of 2022. Most of the private sector industries added jobs in the quarter. The number of jobs increased the most in Food Services and Drinking Places, which added 3,300 jobs or 5.1 percent; followed by Private Educational Services, which added 1,400 jobs or 10.4 percent, Accommodations, which added 1,300 jobs or 3.4 percent, Health Care and Social Assistance, which added 700 jobs or 1.0 percent, and Other Services, which added 700 jobs or 2.6 percent, in the quarter. The Government sector added 1,200 jobs or 1.0 percent in the third quarter of 2023 compared to the same quarter of 2022. The Federal Government added 400 jobs or 1.1 percent, the State Government added 500 jobs or 0.8 percent, and the Local Government added 400 jobs or 2.1 percent, compared to the third quarter of 2022.

In the second quarter of 2023, total annualized nominal GDP increased $7,710 million or 7.8 percent, from the same quarter of 2022. In the first half of 2023, total annualized nominal GDP increased $8,182 million or 8.3 percent from the same period of the previous year. In the second quarter of 2023, total annualized real GDP (in chained 2017 dollars) increased $1,973 million or 2.3 percent from the same quarter of 2022. In the first half of 2023, total annualized real GDP increased $1,987 million or 2.4 percent from the same period of the previous year.

In the second quarter of 2023, total non-farm private sector annualized earnings increased $2,911.2 million or 6.7 percent from the same quarter of 2022. In dollar terms, the largest increase occurred in Accommodation and Food Services; followed by Health Care and Social Assistance; and Professional, Scientific and Technical Services. During the second quarter of 2023, total government earnings increased $680.3 million or 4.0 percent from the same quarter of 2022. Earnings from the federal government increased $513.7 million. Earnings from the state and local governments increased $166.6 million in the quarter.

In the first half of 2023, Honolulu's Consumer Price Index for Urban Consumers (CPI-U) increased 3.4 percent from the same period in 2022. This is 1.5 percentage points below the 4.9 percent increase for the U.S. average CPI-U and is lower than the first half of 2022 Honolulu CPI-U increase of 6.7 percent from the same period of the previous year. In the first half of 2023, the Honolulu CPI-U increased the most in Apparel (15.6 percent), followed by Other Goods and Services (10.3 percent), Food and Beverages (4.5 percent), Recreation (4.4 percent), Education and Communication (2.7 percent), Housing (2.2 percent), and Transportation (1.7 percent) compared to the first half of 2022.

ACM
CONSULTANTS, INC.

# OUTLOOK FOR THE ECONOMY

The August 8, 2023 Maui wildfires have had a significant impact on the State's economy. The impacts are most pronounced for Maui County. Between August 2023 and October 2023, visitor arrivals by air to Maui County decreased 51.4 percent compared to the same period in 2022. Total visitor arrivals by air to the state decreased by 6.2 percent during this three-month period.

The number of unemployed persons (not seasonally adjusted) in Maui County increased by 87.1 percent for the period August 2023 through October 2023 compared to the same period in 2022. Maui County's unemployment rate (not seasonally adjusted) in October 2023 was 7.1 percent. The statewide unemployment rate (not seasonally adjusted) in October 2023 was 3.1 percent, half of a percentage point lower than the national average.

During the three months between August and October 2023, state general excise tax collection decreased 1.7 percent from the same period in 2022.

The impacts of the Maui wildfires on the State's economic indicators to date are mitigated by Hawaii's strong economic performance through July 2023. Total visitor arrivals for the first ten months of 2023 increased by 5.5 percent compared to the same period in 2022. The state added 2.6 percent more non-agricultural payroll jobs (not seasonally adjusted) in the first ten months of 2023 compared to the same period in 2022. The state's unemployment rate (not seasonally adjusted) through the first ten months of 2023 averaged 3.0 percent, half of a percentage point lower than the same period in 2022 and 0.4 percentage point higher compared to the same period in 2019.

The total value of private building permits issued during the first ten months of 2023 increased by 4.2 percent from the same period a year ago. The permit value for additions and alterations increased by 25.3 percent, the value for commercial and industrial permits increased by 9.5 percent, and the value of residential permits decreased by 12.6 percent.

As a comprehensive measure of economic activity, the general excise tax revenue collections increased by 5.1 percent in the first ten months of 2023 compared to the same period in 2022.

Hawaii's real gross domestic product (GDP) recovered to 97.7 percent in the second quarter of 2023 compared to the same period in 2019.

The most recent economic projections at the national level, by the top 50 economic forecasting organizations, published in Blue Chip Economic Indicators (November 10, 2023), indicate that U.S. economic growth is expected to be 2.4 percent in 2023 and 1.2 percent in 2024. DBEDT estimates that the state's real GDP will increase by 1.9 percent in 2023 and 1.3 percent in 2024. In 2025 and 2026, economic growth for Hawaii is expected to be 1.9 percent and 2.0 percent respectively.

Visitor arrivals are projected to be 9.6 million in 2023, lower than previously projected. Visitor arrivals are now expected to increase to over 10 million from 2025 instead of 2024. Visitor spending is projected to be $20.9 billion in 2023 and is expected to increase to $23.5 billion by 2026.

Non-agriculture payroll jobs are forecast to increase by 2.2 percent in 2023. The payroll job counts are projected to increase by 1.6 percent in 2024, 1.6 percent in 2025, and 1.4 percent in 2026.

The state unemployment rate is forecast to be 3.0 percent in 2023, and will improve to 2.8 percent in 2024, 2.6 percent in 2025, and 2.4 percent in 2026.

Personal income is forecast to grow by 4.5 percent in 2023, higher than the projection made in the previous quarter. Personal income is expected to grow by 3.8 percent in 2024, 4.0 percent in 2025, and 4.2 percent in 2026.

As measured by the Honolulu Consumer Price Index for Urban Consumers, inflation is expected to be 2.8 percent in 2023, still lower than the projected U.S. consumer inflation rate of 4.1 percent for the same year. Hawaii consumer inflation is expected to decrease to 2.2 percent by 2026.

Hawaii's population is projected to decrease by 0.2 percent in 2023, decrease by 0.1 percent in 2024, and increase by 0.1 percent in 2025 and in 2026.

ACM
CONSULTANTS, INC.

TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

| Table 1. 2023 QUARTERLY ECONOMIC INDICATORS: STATE OF HAWAII | | | | | | |
|---|---|---|---|---|---|---|
| | 3rd QUARTER | | | YEAR-TO-DATE | | |
| SERIES | 2022 | 2023 | % CHANGE YEAR AGO | 2022 | 2023 | % CHANGE YEAR AGO |
| Civilian labor force, NSA (persons) 1/ | 679,800 | 673,550 | -0.9 | 675,000 | 676,150 | 0.2 |
| Civilian employed, NSA | 655,000 | 653,200 | -0.3 | 651,900 | 655,850 | 0.6 |
| Civilian unemployed, NSA | 24,800 | 20,400 | -17.7 | 23,100 | 20,300 | -12.1 |
| Unemployment rate, NSA (%) 1/ 2/ | 3.7 | 3.0 | -0.7 | 3.4 | 3.0 | -0.4 |
| Total wage and salary jobs, NSA | 623,300 | 633,200 | 1.6 | 618,300 | 635,100 | 2.7 |
| Total non-agric. wage & salary jobs | 618,300 | 628,200 | 1.6 | 613,300 | 630,100 | 2.7 |
| Nat. Resources, Mining, Constr | 37,400 | 37,800 | 1.1 | 36,900 | 37,900 | 2.7 |
| Manufacturing | 12,700 | 12,900 | 1.6 | 12,500 | 12,800 | 2.4 |
| Wholesale Trade | 17,400 | 17,200 | -1.1 | 17,300 | 17,400 | 0.6 |
| Retail Trade | 64,800 | 64,700 | -0.2 | 64,300 | 64,700 | 0.6 |
| Transp., Warehousing, Util | 33,400 | 33,700 | 0.9 | 32,600 | 33,800 | 3.7 |
| Information | 8,500 | 9,000 | 5.9 | 8,300 | 9,000 | 8.4 |
| Financial Activities | 27,800 | 27,000 | -2.9 | 27,700 | 27,200 | -1.8 |
| Professional & Business Services | 71,600 | 72,100 | 0.7 | 71,200 | 72,200 | 1.4 |
| Educational Services | 13,500 | 14,900 | 10.4 | 13,700 | 15,000 | 9.5 |
| Health Care & Social Assistance | 72,000 | 72,700 | 1.0 | 72,100 | 72,400 | 0.4 |
| Arts, Entertainment & Recreation | 12,300 | 12,700 | 3.3 | 11,700 | 12,600 | 7.7 |
| Accommodation | 37,700 | 39,000 | 3.4 | 36,400 | 38,900 | 6.9 |
| Food Services & Drinking Places | 64,700 | 68,000 | 5.1 | 62,600 | 67,400 | 7.7 |
| Other Services | 26,500 | 27,200 | 2.6 | 26,000 | 27,000 | 3.8 |
| Government | 118,000 | 119,200 | 1.0 | 120,000 | 122,000 | 1.7 |
| Federal | 34,800 | 35,200 | 1.1 | 34,600 | 35,000 | 1.2 |
| State | 64,500 | 65,000 | 0.8 | 67,000 | 68,200 | 1.8 |
| Local | 18,700 | 19,100 | 2.1 | 18,500 | 18,800 | 1.6 |
| Agriculture wage and salary jobs | 5,000 | 5,000 | 0.0 | 5,000 | 5,000 | 0.0 |
| State general fund revenues ($1,000) | 2,195,923 | 2,302,033 | 4.8 | 7,419,281 | 7,284,413 | -1.8 |
| General excise & use tax rev. ($1,000) | 1,123,341 | 1,124,191 | 0.1 | 3,218,960 | 3,399,129 | 5.6 |
| Income-individual ($1,000) | 646,588 | 792,169 | 22.5 | 2,896,278 | 2,647,116 | -8.7 |
| Declaration estimated taxes ($1,000) | 235,841 | 175,123 | -25.7 | 1,314,981 | 977,833 | -25.6 |
| Payment with returns ($1,000) | 50,531 | 44,037 | -12.9 | 446,133 | 338,423 | -24.1 |
| Withholding tax on wages ($1,000) | 615,196 | 675,047 | 9.7 | 1,841,566 | 1,982,394 | 7.6 |
| Refunds ('-' relative to State) ($1,000) | -254,980 | -102,038 | -60.0 | -704,403 | -651,534 | -7.5 |
| Transient accommodations tax ($1,000) | 236,640 | 221,517 | -6.4 | 644,867 | 664,921 | 3.1 |
| County Surcharges ($1,000) 3/ | 109,709 | 115,019 | 4.8 | 309,767 | 331,846 | 7.1 |
| Private Building Permits ($1,000) | 782,906 | 1,029,313 | 31.5 | 2,285,864 | 2,765,895 | 21.0 |
| Residential ($1,000) | 283,962 | 431,209 | 51.8 | 1,045,439 | 1,172,736 | 12.2 |
| Commercial & industrial ($1,000) | 135,263 | 149,972 | 10.9 | 318,343 | 338,140 | 6.2 |
| Additions & alterations ($1,000) | 363,681 | 448,132 | 23.2 | 922,082 | 1,255,019 | 36.1 |
| Visitor Days - by air | 22,346,615 | 20,697,558 | -7.4 | 63,284,077 | 65,160,380 | 3.0 |
| Domestic visitor days - by air | 19,808,821 | 17,467,531 | -11.8 | 57,093,686 | 55,056,219 | -3.6 |
| International visitor days - by air | 2,537,794 | 3,230,027 | 27.3 | 6,190,391 | 10,104,141 | 63.2 |
| Visitor arrivals by air - by air | 2,440,593 | 2,338,514 | -4.2 | 6,833,982 | 7,222,287 | 5.7 |
| Domestic flight visitors - by air | 2,188,359 | 1,960,194 | -10.4 | 6,264,536 | 6,122,762 | -2.3 |
| International flight visitors - by air | 252,234 | 378,320 | 50.0 | 569,446 | 1,099,505 | 93.1 |
| Visitor expend. - arrivals by air ($1,000) | 5,248,398 | 4,997,495 | -4.8 | 14,594,316 | 15,743,553 | 7.9 |
| Hotel occupancy rates (%) 2/ | 77.2 | 75.7 | -1.5 | 74.3 | 75.3 | 1.0 |

NA  Not available.
1/  Labor force and jobs are Hawaii DBEDT monthly and annual data.  Quarterly averages computed by the Hawaii DBEDT
2/  Change represents absolute change in rates rather than percentage change in rates
3/  0.5% added to the general excise tax to pay for O'ahu's mass transit system and took effect January 1, 2007.
Other counties have since enabled surcharges and are included here.
Source  Hawaii State Department of Business, Economic Development, & Tourism <https://dbedt.hawaii.gov/economic/>.
Hawaii State Department of Taxation <http://www.hawaii.gov/tax/a5_3txcolrpt.htm> and Hospitality Advisors, LLC.          12/4/2023



TMK (2) 3-8-003:020, Puluhu Road, Puunene, Maui, Hawaii
24-8009

| Table 4. 2023 QUARTERLY ECONOMIC INDICATORS: MAUI COUNTY | | | | | | |
|---|---|---|---|---|---|---|
| | 3rd QUARTER | | | YEAR-TO-DATE | | |
| SERIES | 2022 | 2023 | % CHANGE YEAR AGO | 2022 | 2023 | % CHANGE YEAR AGO |
| Civilian labor force, NSA (persons) 1/ | 88,100 | 87,450 | -0.7 | 87,200 | 87,400 | 0.2 |
| Civilian employed, NSA | 85,050 | 83,050 | -2.4 | 84,200 | 84,200 | 0.0 |
| Civilian unemployed, NSA | 3,050 | 4,400 | 44.3 | 3,000 | 3,200 | 6.7 |
| Unemployment rate, NSA (%) 1/ 2/ | 3.4 | 5.0 | 1.6 | 3.4 | 3.7 | 0.3 |
| Total wage and salary jobs, NSA | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| Total non-agric. wage & salary jobs | 74,800 | 74,100 | -1.1 | 73,900 | 75,000 | 1.6 |
| Nat. Resources, Mining, Constr | 4,700 | 4,800 | 2.1 | 4,500 | 4,700 | 4.4 |
| Manufacturing | 1,200 | 1,300 | 8.3 | 1,200 | 1,300 | 8.3 |
| Wholesale Trade | 1,400 | 1,400 | 0.0 | 1,400 | 1,400 | 0.0 |
| Retail Trade | 9,100 | 8,800 | -3.3 | 9,000 | 8,900 | -1.1 |
| Transp., Warehousing, Util. | 4,200 | 4,100 | -2.4 | 4,100 | 4,200 | 2.4 |
| Information | 700 | 700 | 0.0 | 700 | 700 | 0.0 |
| Financial Activities | 2,900 | 2,900 | 0.0 | 2,900 | 2,900 | 0.0 |
| Professional & Business Services | 7,000 | 6,900 | -1.4 | 6,900 | 7,000 | 1.4 |
| Private Educational Services | 1,300 | 1,300 | 0.0 | 1,300 | 1,400 | 7.7 |
| Health Care & Social Assistance | 7,900 | 8,100 | 2.5 | 7,900 | 7,800 | -1.3 |
| Arts, Entertainment & Recreation | 2,100 | 2,100 | 0.0 | 2,100 | 2,100 | 0.0 |
| Accommodation | 11,400 | 11,000 | -3.5 | 11,200 | 11,300 | 0.9 |
| Food Services & Drinking Places | 9,300 | 9,000 | -3.2 | 9,000 | 9,600 | 6.7 |
| Other Services | 3,200 | 3,200 | 0.0 | 3,200 | 3,200 | 0.0 |
| Government | 8,600 | 8,500 | 0.0 | 8,600 | 8,700 | 1.2 |
| Federal | 900 | 900 | 0.0 | 900 | 900 | 0.0 |
| State | 5,000 | 4,800 | -4.0 | 5,000 | 5,000 | 0.0 |
| Local | 2,700 | 2,800 | 3.7 | 2,600 | 2,700 | 3.8 |
| Agriculture wage and salary jobs | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| State general fund revenues ($1,000) | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| General excise & use tax rev. ($1,000) | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| Income-individual ($1,000) | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| Declaration estimated taxes ($1,000) | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| Payment with returns ($1,000) | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| Withholding tax on wages ($1,000) | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| Refunds ('-' relative to State) ($1,000) | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| Transient accommodations tax ($1,000) | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| County Surcharges ($1,000) 3/ | (NA) | (NA) | (NA) | (NA) | (NA) | (NA) |
| Private Building Permits ($1,000) | 143,120 | 216,011 | 50.9 | 382,185 | 595,067 | 55.7 |
| Residential ($1,000) | 47,777 | 47,939 | 0.3 | 205,011 | 215,069 | 4.9 |
| Commercial & Industrial ($1,000) | 67,278 | 109,897 | 63.3 | 102,023 | 249,404 | 144.5 |
| Additions & alterations ($1,000) | 28,064 | 58,175 | 107.3 | 75,151 | 130,593 | 73.8 |
| Visitor Days - by air | 6,255,336 | 3,948,509 | -36.9 | 18,258,448 | 16,171,501 | -11.4 |
| Domestic visitor days - by air | 5,784,700 | 3,644,450 | -37.0 | 16,717,321 | 14,519,825 | -13.1 |
| International visitor days - by air | 470,634 | 304,059 | -35.4 | 1,541,127 | 1,651,676 | 7.2 |
| Visitor arrivals by air - by air | 803,385 | 515,007 | -35.9 | 2,235,295 | 2,025,195 | -9.4 |
| Domestic flight visitors - by air | 743,648 | 467,194 | -37.2 | 2,073,858 | 1,823,194 | -12.1 |
| International flight visitors - by air | 59,737 | 47,812 | -20.0 | 161,437 | 202,001 | 25.1 |
| Visitor expend. - arrivals by air ($1,000) | 1,568,179 | 1,122,790 | -28.4 | 4,487,859 | 4,696,968 | 4.7 |
| Hotel occupancy rates (%) 2/ | 68.5 | 60.8 | -7.7 | 68.4 | 65.5 | -2.9 |

NA  Not available.   X  Division by zero not meaningful
1/  Labor force and jobs are Hawaii DBEDT monthly and annual data.  Quarterly averages computed by the Hawaii DBEDT.
2/  Change represents absolute change in rates rather than percentage change in rates.
3/  0.5% added to the general excise tax to pay for Oahu's mass transit system and took effect January 1, 2007.
Other counties have since enabled surcharges and are included here
   Source  Hawaii State Department of Business, Economic Development, & Tourism <https://dbedt.hawaii.gov/economic/>.
Hawaii State Department of Taxation <http://www.hawaii.gov/tax/a5_3txcolrpt.htm> and Hospitality Advisors, LLC.     11/28/2023



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## FLOOD MAP





**Flood Hazard Map**

Title:   TMK (2) 3-8-003:020

Notes:   Flood zone(s) on parcel: X

Map generated
on 02/09/2024

Map Legend

Disclaimer: The Hawaii Department of Land and Natural Resources (DLNR) assumes no responsibility arising from the use, accuracy, completeness, and timeliness of any information contained in this report.  Viewers/Users are responsible for verifying the accuracy of the information and agree to indemnify the DLNR, its officers, and employees from any liability which may arise from its use of its data or information.



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

## PROFESSIONAL QUALIFICATIONS – TED YAMAMURA, SRA, CGA, R/W-AC

 

- ### STATE LICENSING

  State Certified General Appraiser,
  State of Hawaii, License No. CGA 160, 9/18/1991
  Expiration:  December 31, 2025

- ### PROFESSIONAL AFFILIATIONS

  Member---Appraisal Institute - Honolulu Chapter #67, **SRA** Designation - 1985
  Member---International Right of Way Association (IRWA),  **R/W-AC** Certification – 2007

- ### PROFESSIONAL AND COMMUNITY INVOLVEMENT

  Past Member---State of Hawaii, Commission on Water Resource Management – 2012-2014
  Past President---Hawaii Chapter of the Appraisal Institute – 2010
  Past Member---County of Maui, Board of Water Supply – 2008-2012
  Past Member---State of Hawaii, Board of Land & Natural Resources – 2001-2006
  Past Member---International Right of Way Association (IRWA), Hawaii Chapter #30 - 2004
  Past President---Maui County Council, Boy Scouts of America – 1987

- ### EXPERIENCE AND EDUCATION

  Executive Vice President
  ACM Consultants, Inc.
  2073 Wells Street Suite 100
  Wailuku, Maui, Hawaii 97693

  *Previously associated with the following:*

  Vice President - Alexander & Alexander, Ltd. - Maui Division – 1979-1982
  Assistant Vice President - Honolulu Federal Savings & Loan Assn. – 1974-1979
  Veteran - United States Air Force – 1967-1971
  Educated:  Maui High School and University of Hawaii

- ### SUCCESSFULLY COMPLETED THE FOLLOWING COURSES:

  National Highway Institute – *Course FHWA-NHI-141054, Practical Applications in Federal-Aid Highway
      Program Appraisals* – Online 2023
  Appraisal Institute – *National Uniform Standards of Professional Appraisal Practice (USPAP)
      2022-2023 Update Course* – Online 2022
  International Right of Way Association – *Course 431, Problems in the Valuation of Partial Acquisitions,*
      Wailuku, Hawaii – Online 2021
  Appraisal Institute *"National Uniform Appraisal Standards for Federal Land Acquisitions ("**Yellow Book**")
      Practical Applications"* Honolulu, Hawaii – 2017
  International Right of Way Association – *Course 403, Easement Valuation,*
      Tucson, Arizona – 2008
  International Right of Way Association – *Course 410, Reviewing Appraisals in Eminent Domain,*
      Tucson, Arizona – 2008
  International Right of Way Association – *Course 401, The Appraisal of Partial Acquisitions*
      Fresno, California – 2007
  International Right of Way Association – *Course 409, Integrating Appraisal Standards,*
      Anaheim, California – 2005
  Appraisal Institute – *Course 400, Uniform Standards of Professional Appraisal
      Practice (USPAP),* Honolulu, Hawaii – 2003
  International Right of Way Association (IRWA) *Course 214, Skills of Expert Testimony*
      Honolulu, Hawaii – 1988
  Society of Real Estate Appraisers (SREA) Course 102 Examination, *"Applied
      Residential Property Valuation",* Honolulu, Hawaii - 1982
  Society of Real Estate Appraisers (SREA) *"Narrative Demonstration Report"* Examination,
      Wailuku, Maui, Hawaii - 1983
  Society of Real Estate Appraisers (SREA) *Course 101 Examination,
      "Introduction to Appraising Real Property",* Honolulu, Hawaii – 1979



TMK (2) 3-8-003:020, Pulehu Road, Puunene, Maui, Hawaii
24-8009

- **CONTINUING EDUCATION SEMINARS AND WORKSHOPS ATTENDED:**

  Appraisal Institute *"Excel Applications for Valuation"* – 2021
  Appraisal Institute *"Eminent Domain and Condemnation"* – 2019
  Appraisal Institute *"Fundamentals of the Uniform Appraisal Standards for Federal Land
          Acquisitions"* – 2019
  Appraisal Institute *"Solving Land Valuation Puzzles"* Honolulu, Hawaii – 2018
  Appraisal Institute *"Income Approach for Residential Appraisers"* Honolulu, Hawaii – 2016
  Appraisal Institute *"The Discounted Cash Flow Model"* Honolulu, Hawaii – 2015
  Appraisal Institute *"Complex Litigation Appraisal Case Studies"* Honolulu, Hawaii – 2014
  The Seminar Group *"Eminent Domain & Condemnation in Hawaii"* Honolulu, Hawaii - 2013
  University of Hawaii/State of Hawaii Department of Transportation *"Federal Highways (FHWA)
          Highway Noise Policy and Abatement Guidelines Workshop"* - 2011
  Appraisal Institute *"Real Estate Finance, Statistics, and Valuation Modeling"* - 2009
  Lorman Education Services *"Law of Easements:  Legal Issues and Practical Considerations in Hawaii"*
          Honolulu, Hawaii – 2006
  Lorman Education Services *"Eminent Domain in Hawaii"* Honolulu, Hawaii – 2006
  Appraisal Institute *"Mini-Series on USPAP Issues"* Honolulu, Hawaii – 2006
  International Right of Way Association (IRWA) *"Uniform Act Symposium"*, Anaheim, California - 2005
  Lorman Education Services *"Zoning and Land Use in Hawaii"*, Honolulu, Hawaii – 2003
  The American Society of Farm Managers & Rural Appraisers *"Conservation Easements"*
          Honolulu, Hawaii – 2001
  The American Society of Farm Managers & Rural Appraisers *"Appraising Rural Residential
          Properties"* - Honolulu, Hawaii - 2001
  Appraisal Institute *"Valuation of Detrimental Conditions in Real Estate"* Honolulu, Hawaii – 2000
  Appraisal Institute *"Case Studies in Residential Highest and Best Use"* Honolulu, Hawaii – 2000
  Appraisal Institute *"Advanced Sales Comparison Approach"* Honolulu, Hawaii - 2000
  Appraisal Institute *"Appraisal of Nonconforming Uses"* Honolulu, Hawaii – 2000
  Appraisal Institute *"Litigation Skills for the Appraiser:  An Overview"*, Honolulu, Hawaii - 1998
  Appraisal Institute *"Special Purpose Properties"*, Honolulu, Hawaii - 1997
  Appraisal Institute *"Appraising for the Secondary Market"*, Honolulu, Hawaii - 1996
  Appraisal Institute *"The Condominium Form and the Small Residential Income Property
          Appraisal Report Form"*, Anaheim, California - 1995
  Appraisal Institute *"Residential Appraisal Review"*, Chicago, Illinois - 1994
  Appraisal Institute *"Understanding Limited Appraisals and Appraisal Reporting Options"*
          Chicago, Illinois - 1994
  Appraisal Institute *"Accrued Depreciation"*, Las Vegas, Nevada - 1992
  Appraisal Institute *"Market Analysis"*, Las Vegas, Nevada – 1992
  American Institute of Real Estate Appraisers (AIREA) *"Easement Valuation"*,
          Los Angeles, California - 1990
  Federal National Mortgage Association (FNMA) *"Fannie Mae Appraisals"*, Honolulu, Hawaii - 1990
  Society of Real Estate Appraisers (SREA) *"Federal Home Loan Bank Board Appraisal
          Standards"*, Honolulu, Hawaii - 1989
  Society of Real Estate Appraisers (SREA) *"Uniform Small Residential Income Appraisal
          Report"*, New York - 1989
  Society of Real Estate Appraisers (SREA) *"Professional Practice"*, Honolulu, Hawaii – 1988
  Society of Real Estate Appraisers (SREA) *"R-41c and the Appraiser"*, Las Vegas, Nevada - 1987
  American Institute of Real Estate Appraisers (AIREA) *"R-41b and Subdivision Analysis"*,
          Honolulu, Hawaii – 1985
  Society of Real Estate Appraisers (SREA) *"Creative Financing and Cash Equivalency"*,
          Honolulu, Hawaii - 1983
  Society of Real Estate Appraisers (SREA) *"Appraising Single Family Residences"*, Honolulu, Hawaii - 1983
  International Right of Way Association (IRWA) *"Condemnation"*, Honolulu, Hawaii - 1982
  Society of Real Estate Appraisers (SREA) *"Application of Market Extraction's"*, Honolulu, Hawaii - 1981

- **LEGAL**

  Qualified as an expert witness:
          First Circuit Court, Honolulu, Hawaii
          Second Circuit Court, Maui, Hawaii
          Third Circuit Court, Hawaii Island, Hawaii
          U.S. District Court, Honolulu, Hawaii
          U.S. Bankruptcy Court, Honolulu, Hawaii
  Experienced in real estate arbitration assignments in the State of Hawaii



History of Phase VI

DEM worked with Alexander and Baldwin and came to a verbal agreement to purchase this property. While still owned by and with permission of Alexander and Baldwin, DEM/SWD paid for subdividing the Phase VI, TMK: 3-8-003-020-0000 parcel.  The subdivision was approved June 27, 2011.  SWD then incorporated Phase VI in a landfill EIS and included the parcel in a Special Use Permit for Solid Waste activities. On the basis of A&B agreement to sell Phase VI, SWD planned the next lateral expansion of the landfill and began engineering design for the expansion.  DEM/SWD was unsuccessful to get budget appropriations to purchase this parcel.

In late 2015 Komar Maui Properties I, LLC purchased the Phase VI property.

Subsequent to the purchase the County made several informal inquires to Komar that the County wished to obtain the property for landfill expansion.  Komar was unwilling to sell.  A formal offer to purchase the property was sent by the County to Komar Maui Properties I, LLC in July of 2023 which was not responded to.  Talks with Komar's designated "Land Manager" have taken place since that offer was made with some alternatives discussed.  But they are still unwilling to sell.

# COUNCIL OF THE COUNTY OF MAUI

## WAILUKU, HAWAII  96793

# CERTIFICATION OF ADOPTION

It is HEREBY CERTIFIED that RESOLUTION NO. 24-57 was adopted by the Council of the County of Maui, State of Hawaii, on the 5th day of April, 2024, by the following vote:

| MEMBERS | Alice L. LEE Chair | Yuki Lei K. SUGIMURA Vice-Chair | Tom COOK | Gabriel JOHNSON | Natalie A. KAMA | Tamara A. M. PALTIN | Keani N. W. RAWLINS-FERNANDEZ | Shane M. SINENCI | Nohelani U'U-HODGINS |
|---------|------|------|------|------|------|------|------|------|------|
| ROLL CALL | Aye | Aye | Aye | Aye | Aye | Aye | Aye | Aye | Aye |

COUNTY CLERK